## A95A2492. RODGERS v. FIRST UNION NATIONAL BANK OF GEORGIA.

### (470 SE2d 246)

ANDREWS, Judge.

First Union National Bank of Georgia ("First Union") sued Patrick St. E. Rodgers, the guarantor of two notes, when the corporation of which he was president defaulted on its payments. The trial court granted summary judgment in favor of First Union on the issue of liability but determined that First Union failed to prove the exact amount Rodgers owed. For the reasons that follow, we affirm.

Summary judgment is appropriate when the court, viewing all the evidence and drawing reasonable inferences in a light most favorable to the non-movant, concludes that the evidence does not create a triable issue as to each essential element of the case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Viewed in that light, the record shows the following. Rodgers formed a corporation, Maitland Grove, Inc. ("Maitland") to develop certain real property into a subdivision. As president of Maitland, Rodgers executed a note and security agreement in favor of First Union in the principal amount of $1,950,000. Rodgers later executed a second note to First Union for $300,000. Rodgers executed an unconditional personal guaranty for the payment of all debts owed to First Union by Maitland including both notes. After Maitland defaulted on both notes, First Union demanded Rodgers make repayment, plus interest and attorney fees. At foreclosure, First Union acquired the real property for $1,700,000, resold the property for less than the foreclosure price, and then sued Rodgers for the deficiency.

In his answer, Rodgers admitted that he had "not tendered any amount to Plaintiff per its demand." Rodgers raised no counterclaims but offered four defenses: failure to state a claim, estoppel, a contention that OCGA § 44-14-161 precluded the suit because the confirmation order was not final, and an alleged violation of 15 USC § 1691 et seq. and 12 CFR § 202.7 (d).

1. Rodgers contends the trial court erroneously granted summary judgment because the guarantor contract was void, First Union illegally took control of the development project prior to foreclosure and First Union "chilled the market" causing the destruction of Maitland.

Rodgers' admissions that he executed the two notes and had not paid First Union the amount it demanded established First Union's prima facie right to the judgment sought, and Rodgers then had the burden of establishing any claimed defense. *Brooks v. McCorkle*, 174 Ga. App. 132 (329 SE2d 214) (1985). "When signatures [on a negotiable instrument] are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense." OCGA § 11-3-307 (2). Because the evidence

indisputably shows that First Union established a prima facie right to the judgment it sought on the notes, we need examine only whether Rodgers raised any defense to preclude summary judgment.

(a) First we address whether as a matter of law the guaranty could be deemed void due to the violation of applicable federal laws and regulations. Rodgers specifically argues that First Union's requirement that he personally guarantee Maitland's notes while failing to make a preliminary determination of the creditworthiness of Maitland was racially discriminatory.

Rodgers executed the guaranty in December 1988, and in June 1992 invoked an alleged violation of 15 USC § 1691, the Equal Credit Opportunity Act ("ECOA"), and 12 CFR § 202.7 (d) as a general defense to First Union's suit. Even if this defense had factual support, it was barred as a matter of law for procedural and statute of limitation reasons. An alleged violation of 15 USC § 1691 et seq. and 12 CFR 202.7 (d) (1) cannot be asserted as an affirmative defense to void a guaranty, but only as a compulsory counterclaim. See *CMF Virginia Land, L.P. v. Brinson*, 806 FSupp. 90, 93 (E.D. Va. 1992) (holding the ECOA, 15 USC § 1691 et seq., is not properly asserted as an affirmative defense to liability and cannot, as a matter of law, render a debt void); and *Diamond v. Union Bank & Trust*, 776 FSupp. 542 (N.D. Okla. 1991) (holding no authority in statutory language or case law, for the proposition that a violation of the ECOA renders an instrument void).

Even if Rodgers had asserted an alleged violation of the ECOA as a counterclaim, such claim was barred by the applicable statute of limitation, under 15 USC § 1691e (f), "[n]o . . . action shall be brought later than two years from the date of the occurrence of the violation." Rodgers had two years from December 1988 when he signed the guarantor agreement to file a complaint. Rodgers argues an exception to the two-year limit was permitted in *Silverman v. Eastrich Multiple Investor Fund, L.P.*, 51 F3d 28 (3rd Cir. 1995) (holding exception to two-year statute of limitation possible where guarantor spouse raises violation of the ECOA at her first opportunity as defense to recoupment). However, this Court is not bound by decisions of other states or federal courts except the United States Supreme Court, and we do not find the reasoning in *Silverman* persuasive. *T. G. Stegall Trucking Co. v. Tower Lines*, 135 Ga. App. 286, 288 (5) (217 SE2d 488) (1975). Thus, the trial court correctly determined that as a matter of law the guaranty was not void.

(b) Rodgers contends that there is an unresolved issue of material fact as to whether First Union's requirement that he personally guarantee Maitland's notes was racially discriminatory.

In support of its summary judgment motion, First Union offered evidence showing that it treated Rodgers exactly the same as any

other individual pursuing a real estate development project. First Union's vice president of its special assets division, who oversaw problem credits like Maitland, testified that in her mind, "Rodgers was Maitland." In fact, when Rodgers initially applied for the nearly $2 million loan, he listed himself as the borrower d/b/a Maitland Grove, Inc. First Union's manager of its real estate credit administration division testified that most real estate development projects, like Maitland, are usually formed for the limited purpose of acquiring property and usually do not have proven track records or retained earnings. He testified that it was First Union's standard banking practice to require a personal guaranty from the primary player or the main individual behind a corporation undertaking such a real estate development project.

To avoid summary judgment on this issue, Rodgers could not rest on his pleadings but had to come forward with some evidence. Yet Rodgers offered not a shred of evidence that he was discriminated against by being required to personally guarantee the money he wanted to borrow for his corporation. In fact, 12 CFR § 202.7 (d), upon which he relies, allows a creditor to require a personal guaranty where necessary to support the extension of credit.

At summary judgment a party who will not bear the burden of proof at trial need not conclusively prove the opposite of each element of the non-moving party's case. Rather, that party must demonstrate by reference to the evidence in the record, as First Union did here, that there is an absence of evidence to support at least one essential element of the non-moving party's case. *Lau's Corp.*, 261 Ga. at 495. Accordingly, we are unable to find merit to this enumeration.

(c) Rodgers claims that First Union tortiously interfered with Maitland by undertaking an active role in the subdivision development project and thereby became liable for the less than desirable results. Rodgers contends that First Union prematurely revealed to area builders that his project was in financial trouble, thereby impeding Maitland's prospective sales. We note that Rodgers failed to raise this claim as a counterclaim and merely listed it as a general defense and offers no authority for doing so.

Moreover, in opposition to summary judgment, Rodgers presented no evidence other than his own affidavit that First Union tortiously interfered in the operation of his business or "chilled the market." To prove tortious interference with business relations, Rodgers would have to prove that First Union acted improperly and without privilege, acted purposely with malice and the intent to injure, induced a third party or parties not to enter into or continue a business relationship with Maitland, and thereby caused some financial injury. *Life Care Ambulance v. Hosp. Auth. of Gwinnett County*, 202 Ga. App. 864, 868 (415 SE2d 502) (1992).

The evidence shows that Maitland ran over budget, was delayed due to abnormally heavy rains, and experienced problems with the county releasing building permits due to Maitland's maintenance deficiencies and Maitland's failure to make certain repairs. None of these problems was in any way due to any action of First Union. Prior to foreclosure when Maitland was experiencing problems, First Union's officials tried to aid Rodgers and deliberately delayed foreclosure in an effort to arrange some assistance for Rodgers. Even assuming that Rodgers could supply evidence of First Union's interference with the operation of Maitland, and we note he has failed to do so, the record shows that Rodgers did not set forth the elements of any cognizable claim. Certainly, he failed to provide any evidence of malice or an intent to harm Maitland. *Life Care Ambulance*, 202 Ga. App. at 868.

2. Rodgers contends that the trial court erred by finding the contract provided for attorney fees of 15 percent of the total amount because the guaranty provides only for the reasonable attorney fees actually incurred by First Union.

The guaranty at issue provides the following, "Guarantor [Rodgers] expressly hereby agrees to pay all legal expenses and the reasonable attorneys' fees actually incurred by First Union National Bank. Guarantor hereby stipulates and agrees that 15% of the total amount(s) due hereunder and remaining unpaid shall be deemed to be the 'reasonable attorneys' fees.' " Rodgers contends that only the first sentence is applicable and that he is responsible, if at all, for only the reasonable attorney fees actually incurred by First Union. First Union counters that the second sentence is binding and seeks to recover 15 percent of the total balance. We agree with First Union and do not find the two sentences ambiguous when construed together. OCGA § 13-1-11 (a) (1) authorizes the recovery of attorney fees not in excess of 15 percent of the principal and interest owing on a note, and First Union does not seek to recover more than the statute permits.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED MARCH 6, 1996 —
RECONSIDERATION DENIED MARCH 26, 1996 —

*Albert A. Chapar, Jr.*, for appellant.
*Glass, McCullough, Sherrill & Harrold, R. Phillip Shinall III, Bryan A. Downs*, for appellee.