A95A2781. HUMANA, INC. et al. v. KISSUN et al.
(471 SE2d 514)

BLACKBURN, Judge.

We granted Humana, Inc.'s (Humana) application for interlocutory review of the trial court's order denying its motion for summary judgment as to all plaintiffs' claims. Plaintiffs brought the underlying medical malpractice action against Humana and its wholly-owned subsidiary General Hospital of Galen, Inc., (General) d/b/a Humana Hospital-Newnan (the hospital).[1] Humana contends the trial court erred in denying its motion for summary judgment, thereby effectively disregarding its separate corporate status absent a showing that it had abused the corporate form or that adherence to its separate corporate identity would promote injustice or protect fraud. The first issue on appeal, therefore, is whether plaintiffs' evidence pierces the corporate veil between General and Humana.

1. In order for the plaintiffs' evidence to pierce the corporate veil, "it must be shown that [Humana's] disregard of the corporate entity made [General] a mere instrumentality for the transaction of [Humana's] affairs; that there is such unity of interest and ownership that the separate personalities of the [subsidiary] and the own-

---

[1] William Thomas Redwood, M.D., was also named as a defendant but is not involved in this appeal.

ers no longer exist; *and* to adhere to the doctrine of corporate entity would promote injustice or protect fraud." (Punctuation omitted; emphasis supplied.) *Derbyshire v. United Bldrs. Supplies*, 194 Ga. App. 840, 844 (392 SE2d 37) (1990).

Both factors must be found because "[o]ne reason the law establishes separate corporate identity is so that a corporation *can* hold itself independently apart and insulated from the existence of another related corporation even while it uses the related corporation or controls it to promote its own ends." *Boafo v. Hosp. Corp. of America*, 177 Ga. App. 75, 76 (338 SE2d 477) (1985). "For the issue to be submitted to a jury there must be evidence that the corporate arrangement was a sham, used to defeat justice, to perpetrate fraud or to evade statutory, contractual or tort responsibility." *Derbyshire*, supra at 844. See also *Hogan v. Mayor &c. of Savannah*, 171 Ga. App. 671, 673 (3) (320 SE2d 555) (1984); *Kelley v. Austell Bldg. Supply*, 164 Ga. App. 322, 325 (3) (297 SE2d 292) (1982).

In *Boafo*, supra, the plaintiffs' attempt to pierce the corporate veil between the Hospital Corporation of America (HCA) and its wholly-owned subsidiary, Medical Center West, Inc. which operated Parkway Regional Hospital, the allegedly negligent hospital, was unsuccessful.

Therein, the evidence indicated "that the two corporations shared some officers, that they jointly purchased the hospital property from bankruptcy receivership, that Medical Center West, Inc. was not incorporated in Georgia until six days after the property was purchased, that HCA own[ed] 100% of the Medical Center West stock, that some officers were paid only by HCA and the hospital administrator was paid by HCA for security reasons while the amount was charged back against Parkway Regional Hospital, that major (not day-to-day) accounting and financial functions [were] performed by HCA through a national cash management system, that Medical Center West [had] insurance coverage of the hospital by an insurer who [was] another wholly owned subsidiary of HCA, that HCA operate[d] a Center for Health Studies which provide[d] non-mandatory educational seminars for hospitals which [was] available to Parkway Regional Hospital at less than full cost, that HCA employ[ed] a national purchasing director to negotiate purchasing agreements for HCA and subsidiary-owned hospitals but Medical Center West [was] free to, and [did], negotiate its own purchasing contracts if it [got] better rates." Id. at 75-76.

We determined that "no basis exist[ed] for disregarding HCA's separate identity unless its ulterior motive or purpose [was] to promote fraud and injustice or defeat a public convenience." Id. at 77. As there was no evidence of HCA's purpose, we affirmed the trial court's grant of HCA's motion for summary judgment. Id.

In the present case, the evidence likewise fails to produce any evidence that Humana sought to perpetrate fraud or evade contractual or tort responsibility. The evidence shows that General is incorporated under the laws of Utah and Humana is incorporated in the State of Delaware. Each corporation maintained separate minute books and separate corporate seals. The two corporations share officers in that all the officers of General are also officers of Humana, although Humana has many officers who are not officers of General. The hospital used the Humana national logo on its letterhead, sign, and advertising, but the hospital did its own local advertising. Humana hired attorneys for General to handle suits for or against the hospital. The hospital's chief executive officer, Jack Davis, was hired and supervised by Humana's regional vice president. Davis was responsible for the hospital's day-to-day operation. He exercised complete hiring, firing, and purchasing authority for the hospital, as long as the decisions were within the budget set by the regional vice president. Davis signed all contracts and leases on the part of General Hospitals of Humana, Inc. d/b/a Humana Hospital-Newnan.[2]

Humana supported its motion for summary judgment by, among other things, the affidavit and deposition of Walter Neely, its vice president and general counsel. The overall import of Neely's affidavit was that although General was a wholly-owned subsidiary corporation of Humana, the two corporations were separate in all means and sustained independent identities. Upon being cross-examined regarding his affidavit, Neely admitted that his averments were based upon his general knowledge of Humana's relationship with its subsidiary corporations rather than any specific knowledge of Humana's relationship with General. As Neely's affidavit was not based upon personal knowledge, it is without probative value. See *Williams v. Hajosy*, 210 Ga. App. 637, 639 (436 SE2d 716) (1993). Further, where the testimony between Neely's affidavit and deposition is contradictory, it will be construed against him. See *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (343 SE2d 680) (1986).

In Neely's deposition he testified as to the usual way Humana interacted with its subsidiaries. While we do not consider this as direct evidence of Humana's interaction with General, it is some evidence of their interaction, especially considering that no contradictory evidence was produced. Neely deposed that Humana operated a credit and charge back accounting system by withdrawing cash from its hospitals' depository accounts on a daily basis and creating an asset on the hospital's books in the intercompany account. Neely deposed

---

[2] General Hospitals of Humana, Inc. later changed its name to General Hospitals of Galen, Inc.

that Humana was very scrupulous in accurately keeping the account. Neely further deposed that Humana would reduce any hospital's deficit by crediting its intercompany account or lessening its intercompany liability so that the hospitals were always funded with the amount necessary to meet their obligations. Additionally, the hospital was issued liability insurance of at least five million dollars. Although the existence of excess liability insurance was discussed during Neely's deposition, no admissible evidence of such insurance is contained in the record.

Our review of the evidence reveals very little difference between the present case and the evidence outlined in *Boafo,* supra, as to the issues raised in this division. The present case involves the use of the Humana name and logo by the hospital but such fact does not require a different result. The common use of advertising and the use of the same logo is not sufficient to pierce the corporate veil. See *Cornwell v. Williams Bros. Lumber Co.,* 139 Ga. App. 773 (229 SE2d 551) (1976).

Most importantly, no evidence was produced indicating that Humana's interaction with its subsidiaries was calculated in any way "to promote fraud and injustice or defeat a public convenience." *Boafo,* supra at 77. See also *Fla. Shade Tobacco Growers v. Duncan,* 150 Ga. App. 34, 35 (256 SE2d 644) (1979). Compare *Kelley,* supra (sufficient evidence to authorize jury to find use of separate entities used to evade contractual responsibility).

The law allows a parent corporation to use its subsidiary to promote its own purposes and yet, to keep its separate identity. See *Boafo,* 177 Ga. App. at 76. In order to disregard the separate corporate entity which the law has created, evidence that General was a "mere instrumentality for the transaction of [Humana's] affairs . . . [and] that the separate personalities of the corporation and the owner no longer exist" in order to promote injustice or protect fraud must be presented. Plaintiffs have failed to present such evidence.

"A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue." *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474) (1991).

In view of the absence of evidence outlined above, the trial court erred in denying Humana's motion for summary judgment as to this division, effectively disregarding the separate corporate status of Humana absent a showing that it had abused the corporate form or that adherence to its separate corporate identity would promote in-

justice or protect fraud.

2. Plaintiffs assert that even if insufficient evidence was presented to pierce the corporate veil between Humana and General, their additional theories of liability preclude summary judgment to Humana. Plaintiffs contend that Humana is liable for the negligent acts and omissions attributable to the staff and doctors at the hospital, as all of these individuals and the hospital are its apparent/ostensible agents. Plaintiffs alternatively assert that Humana is liable for the negligent acts and omissions attributable to its joint venturer, General.

Apparent or ostensible authority as a basis upon which a hospital could be held liable for the medical negligence of doctors was recognized in *Brown v. Coastal Emergency Svcs.*, 181 Ga. App. 893, 897 (354 SE2d 632) (1987), in which this Court held that "the doctrine of apparent agency is predicated on principles of estoppel and applies where it can be shown that the third party dealt with the agent in reliance upon the authority which the principal has apparently conferred upon him." (Punctuation omitted.) " 'One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.' " Id.

In affirming the opinion of this Court, the Georgia Supreme Court held: "There is an objective standard. The apparent principal must represent or hold out the apparent agent. Then, too, justifiable reliance must lead to the injury." *Richmond County Hosp. Auth. v. Brown*, 257 Ga. 507, 509 (361 SE2d 164) (1987).

In response to defendant's motion for summary judgment, plaintiffs provided the affidavit of plaintiff Ray M. Thomas, which averred that he had relied upon the name and reputation of Humana in leaving Amala Thomas in the care of the hospital; that the brochures and signs which he saw at the hospital prominently featured the "Humana" name; that he was unfamiliar with and no one advised him that the hospital was owned or operated by anyone other than Humana. Plaintiffs argue that Humana held out the hospital and its staff, as its agents, acting on its behalf and that Amala Thomas was injured as a result of a reliance upon the representations of Humana.

Plaintiffs argue that Humana has failed to factually pierce or otherwise respond to plaintiffs' apparent/ostensible agent and joint venturers theories of liability and that questions of fact exist as to such matters and the trial court did not err in denying defendant's motion for summary judgment as to such claims.

Plaintiffs' assertions require this Court to address an issue of first impression, that being, can those uses of a subsidiary corpora-

tion by its parent corporation which the court has approved without jeopardizing the separate identity and liability shield of the parent, be used to establish the elements of a claim against the parent based on apparent authority or joint venturer?

Plaintiffs' reliance upon *Brown v. Coastal Emergency Svcs.*, supra; *Richmond County Hosp. Auth. v. Brown*, supra; *Abdul-Majeed v. Emory Univ. Hosp.*, 213 Ga. App. 421, 423 (445 SE2d 270) (1994), and *Whitaker v. Zirkle,* 188 Ga. App. 706, 709 (374 SE2d 106) (1988), is misplaced as none of these cases involves an attempt to impose liability upon a parent corporation for the acts of its subsidiary corporation which owns and operates the involved hospital. Rather, they involve an attempt to impose liability upon the hospital and the corporation with which it has contracted to provide medical services (usually emergency room) for the acts of the physicians who are retained to actually treat the patients of the subject hospital.

Standing alone, the lawful uses of a subsidiary corporation by its parent corporation cannot support a claim against such parent under a theory of apparent agency or joint venturer. Such claims must rest upon factors other than those which the law contemplates and approves. Since the law allows a parent corporation to use its subsidiary to promote its own purposes and yet keep its separate identity, to hold otherwise, would be to allow the very uses approved in "piercing the veil" tests to establish a claim under a theory of apparent agency or joint venturer, thus vitiating the law of parent/subsidiary corporate use. See *Boafo*, supra.

In the present case, plaintiffs attempt to hold Humana (parent corporation) liable for the actions of General (subsidiary corporation) and those physicians actually treating patients at the hospital operated by General under alternative apparent agency and joint venturer theories. Plaintiffs argue that the fact that the Humana sign and logo were used at the hospital distinguishes this case from *Boafo*, and is evidence that Humana allowed General to hold itself out as being Humana, relying upon *Watson v. Howard Johnson Franchise Systems*, 216 Ga. App. 237 (453 SE2d 758) (1995).

*Watson*, supra, was a case which involved a franchise arrangement, did not involve the uses of a subsidiary corporation by its parent corporation, and turned on the specific facts therein involved. In that case, the franchise agreement required the franchisee to have a plaque at the motel check-in desk advising customers of the details of ownership and operation of the motel. The franchisor inspected the subject motel, did nothing about the violation, and was charged with knowledge thereof. Additionally, the franchisor had control of the advertising signs which were used by the franchisee to attract customers.

While *Boafo* did not involve the use of a sign, the use of a com-

mon logo and advertising was involved in *Cornwell*, supra, and such facts were deemed to be insufficient, even in light of additional facts, to treat two corporations as a single entity. We cannot consider those approved uses of a subsidiary corporation by a parent corporation in support of a claim under a theory of apparent agency or joint venturer. Construing other evidence most favorably to plaintiffs there is an absence of evidence giving rise to a triable issue as to such claims.

Plaintiffs contend that Humana has not addressed its apparent authority or joint venturer contentions and therefore summary judgment should be denied. Humana however moved for summary judgment as to all of plaintiffs' claims and pointed out a lack of evidence to support plaintiffs' contentions. Humana met its burden under *Lau's Corp. v. Haskins*, supra, and it thus fell to plaintiffs to point to specific admissible evidence contained in the record giving rise to a triable issue. Plaintiffs having failed to do so, Humana was entitled to summary judgment and the trial court erred in denying such motion.

*Judgment reversed. Andrews, Johnson and Ruffin, JJ., concur. Birdsong, P. J., concurs and concurs specially. Beasley, C. J., concurs in part and dissents in part. McMurray, P. J., Pope, P. J., and Smith, J., dissent.*

BIRDSONG, Presiding Judge, concurring specially.

In my opinion, the analysis of the majority in this case is correct and this case is controlled by *Boafo v. Hosp. Corp. of America*, 177 Ga. App. 75, 76 (338 SE2d 477).

BEASLEY, Chief Judge, concurring in part and dissenting in part.

I agree with Judge Smith except that I would affirm the trial court on the issues of apparent agency and joint venture only; I would reverse the trial court's denial of summary judgment as to the issue of piercing the corporate veil.

MCMURRAY, Presiding Judge, dissenting.

I respectfully dissent from the judgment of reversal. In my view, there is *no question* but that defendant Humana, Inc. *is*, as a matter of law, *liable* for the alleged medical malpractice of employees of Humana, Inc.'s wholly-owned subsidiary *and joint-venturer*, defendant General Hospital of Galen, Inc., d/b/a Humana Hospital-Newnan. " 'Joint venturers bear the same relation to each other as do the partners in a partnership. Each is an agent of the entity.' [Cit.] . . . [A] joint venture [is] not a distinct legal entity separate and apart from the parties composing it and thus an employee engaged in activities of the joint venture is an employee of each of the joint venturers under ordinary principles of agency." *Boatman v. George Hyman*

*Constr. Co.*, 157 Ga. App. 120, 123 (276 SE2d 272). "A partner in a joint venture is liable for the wrongful acts of its partner committed in the ordinary course of business of the joint venture and cannot avoid this liability by an agreement between the partners that one of the partners will carry out the business of the joint venture as an independent contractor." *Block v. Woodbury*, 211 Ga. App. 184, 186 (2) (438 SE2d 413). In the case sub judice, the trial court correctly determined that summary judgment in favor of the joint venturer defendant Humana, Inc., is unwarranted. As my colleagues in the majority would nevertheless reverse that correct determination, I respectfully dissent.

POPE, Presiding Judge, dissenting.

I respectfully dissent. The trial court correctly denied summary judgment since the plaintiffs presented sufficient evidence to create a jury issue as to whether the corporate veil was pierced.

"Using terminology such as 'piercing the corporate veil,' 'looking at the substance rather than at the form,' or 'disregarding the corporate fiction,' our courts have disregarded the separate entity of a corporation where it has overextended its privileges. [Cit.] To activate this cut-through, there must be abuse of the corporate form. 'Sole ownership of a corporation by one person or another corporation is not a factor, . . . and neither is the fact that the sole owner uses and controls it to promote his ends.' [Cit.]" *Derbyshire v. United Bldrs. Supplies*, 194 Ga. App. 840, 844 (2) (392 SE2d 37) (1990).

"The law intervenes when the separate personalities of the corporation and its owner no longer exist. The question is whether the corporation serves as the alter ego or business conduit of its owner. To establish this, 'it must be shown that the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and to adhere to the doctrine of corporate entity would promote injustice or protect fraud.' [Cit.]" Id. at 844. Similarly, in the context of parent/subsidiary corporations, "great caution should be exercised in disregarding or going behind the corporate entity, [but] it may be done when the subsidiary is shown to be the alter ego or business conduit of the parent. However, it must appear that the subsidiary is a mere instrumentality of the parent." (Citation and punctuation omitted.) *SunAmerica Financial v. 260 Peachtree St.*, 202 Ga. App. 790, 798 (3) (415 SE2d 677) (1992).

" 'When litigated, the issue of "piercing the corporate veil is a jury question." [Cit.] For the issue to be submitted to a jury there must be evidence that the corporate arrangement was a sham, used to defeat justice, to perpetrate fraud or to evade statutory, contrac-

tual or tort responsibility.'" *Derbyshire*, 194 Ga. App. at 844.

Here, the following evidence was presented. At the time of the incident in 1991, General Hospital of Galen, Inc., d/b/a Humana Hospital-Newnan ("the hospital") used the Humana national logo on its letterhead, signs, and in various advertising. The Humana logo was displayed on hospital brochures, maps to the hospital, and the hospital's annual report. The Humana logo was also displayed on the hospital's admission and discharge summary sheets, and on the sign in front of the hospital.

During his deposition, Walter Neely, Humana's vice-president and general counsel, acknowledged that Humana and its various subsidiaries tried to create a public awareness that the Humana name was synonymous with good service and good quality. Neely also stated that the name "Humana" was equated with a large national health care company, and that this name recognition was a "goal."

Humana hired attorneys for the hospital to handle lawsuits. Moreover, there was evidence that Humana pursued collection suits on behalf of the hospital in the name "Humana Hospital-Newnan."

The hospital's chief executive officer, Jack Davis, was hired and supervised by Humana's regional vice president. All the officers of the hospital were also officers of Humana and Humana owned 100 percent of the stock in the hospital. Davis received stock options or stock bonuses in Humana stock. The hospital's budget was set by Humana's regional vice-president. Bills and payroll were paid for the hospital on Humana's intercompany account and the hospital had no separate banking account. When the hospital received payments, they were withdrawn by Humana and "an asset was created on the hospital books in the intercompany account." The hospital did not have access to the money which it was paid, instead this money "was swept daily into a Humana, Inc. account."

As the majority notes, the hospital managed its day-to-day affairs, maintained its separate minute books and corporate seal, and was fully insured. Although there was evidence that the hospital was fully capitalized, Davis explained that "Humana always funded whatever was necessary in order to allow the hospital to maintain a position where it could pay its creditors, payroll, et cetera. . . ."

There was sufficient evidence to create a jury issue on the issue of piercing the corporate veil. Unlike the facts of *Boafo v. Hosp. Corp. of America*, 177 Ga. App. 75 (338 SE2d 477) (1985), the evidence of the control that Humana exerted over the hospital here created a factual issue. There was evidence that there was such a unity of interest and ownership that the separate personalities of Humana and the hospital no longer existed, and to adhere to the doctrine of corporate entity would unfairly allow Humana to evade tort responsibility. See generally *Mark Six Realty Assoc. v. Drake*, 219 Ga. App. 57 (463 SE2d

917) (1995).

I do not agree with the suggestion in the majority opinion that an element resembling scienter is necessary to pierce the corporate veil. In this case, the fact that Humana corporation was operating legally does not factor into the assessment of the distinctiveness of the corporate entities. See *Condenser Svc. &c. Co. v. Brunswick Port Auth.*, 87 Ga. App. 469, 475 (74 SE2d 398) (1953) (veil may be pierced to avoid fraud, injustice, *or for other equitable reasons*).

Because a jury issue was created as to whether the corporate veil was pierced, I need not address the issue of whether Humana may be sued under a theory of apparent authority. Usually the question of apparent authority has been combined into the analysis of whether the corporate veil has been pierced, see generally *Triple "C" Recreation Assn. v. Cash*, 124 Ga. App. 754 (186 SE2d 145) (1971). Although there could be situations in which a corporation acts with the apparent authority of another and the corporate veil has *not* been pierced, the instant case does not present this separate question. Similarly, because of my conclusion, I need not reach the issue of joint venture addressed in Presiding Judge McMurray's dissent.

SMITH, Judge, dissenting.

I agree with the majority that insufficient evidence was presented in this case to pierce the corporate veil. Nothing in this record indicates to me that arrangements between General and Humana were used to perpetrate fraud or to evade responsibilities.

I must respectfully dissent, however, because I disagree with the majority's conclusion that because Humana did not abuse the corporate form we are precluded from finding that it may be liable to the plaintiffs here under a theory of apparent or ostensible agency. In my view, applying an apparent agency theory in this case would not undermine or "vitiate" the law pertaining to parent and subsidiary corporations. It is possible to refuse to pierce the corporate veil with respect to many of the operations of General here while still holding that Humana may be liable to certain plaintiffs under a theory of apparent agency.[3]

Piercing the corporate veil looks to the relationship between the two defendants; apparent agency, on the other hand, looks to the relationship of the defendant to the plaintiff. As the majority correctly points out, apparent agency is basically an estoppel theory; it is called into play when a member of the public deals with another and justifiably relies upon representations by the defendant that he is dealing with the defendant's agent. In *Richmond County Hosp. Auth.*

---

[3] Presiding Judge Pope recognizes this possibility in his separate dissent. He does not reach this issue, however, because in his view the corporate veil was pierced.

*v. Brown*, 257 Ga. 507 (361 SE2d 164) (1987), the hospital and the emergency room group were two separate entities; the doctor who treated the plaintiff was not *actually* the hospital's employee or agent. The hospital was nevertheless liable to the plaintiff for any negligence on the part of the doctor because the hospital, by its actions, represented to the public that the emergency room doctors were its employee agents.

The same is true here. The separate corporate identities were not abused, and the two separate corporations were not used to perpetrate fraud or evade responsibilities. They are actually separate corporations. Nevertheless, Humana represented to the public that it owned or managed the hospital. Signs, brochures, and advertisements proclaimed to the world that this was a Humana hospital. Ray Thomas, the husband of the decedent in this case, stated in his affidavit that he had seen the signs and knew of Humana's reputation. According to Thomas, in allowing his wife to be treated at the hospital, he specifically relied upon Humana's reputation for quality medical care.

I see nothing in the record rebutting this evidence. It is sufficient, in my opinion, to support a claim of apparent agency, the viability of which remains despite the failure to pierce the corporate veil. Consequently, I would affirm the trial court.

DECIDED MARCH 15, 1996 —
RECONSIDERATION DENIED MARCH 29, 1996 — ▮▮▮▮▮▮

*Smith, Gambrell & Russell, David M. Brown, S. David McLean, Jr.*, for appellants.
*Butler, Wooten, Overby & Cheely, James E. Butler, Jr., Joel O. Wooten, Jr., Alston & Bird, Judson Graves, R. Clay Milling II, Floyd & Stanford, Jackson C. Floyd, Jr.*, for appellees.