A96A2322, A96A2323. NISSAN MOTOR ACCEPTANCE CORPORATION v. STOVALL NISSAN, INC.; and vice versa.
(480 SE2d 322)

BLACKBURN, Judge.

Nissan Motor Acceptance Corporation (NMAC), a financing company, had contracts with Stovall Nissan, Inc. (Stovall), a car dealership, to provide wholesale and retail financing for Stovall's customers purchasing Nissan cars and trucks. Under this arrangement, NMAC purchased motor vehicle installment sales contracts from Stovall.

The current dispute arose when NMAC accused Stovall of selling NMAC chattel paper of this type containing misrepresentations.

When Stovall refused NMAC's demand to cure the alleged misrepresentations, NMAC suspended its financing arrangement with Stovall. Stovall then filed suit against NMAC, alleging violations of the Georgia Motor Vehicle Dealer's Day in Court Act (GDDCA), OCGA § 10-1-630 et seq., and the federal Automobile Dealers Day in Court Act (ADDCA), 15 USCS § 1221 et seq.[1] The trial court granted NMAC's motion for summary judgment on the state claim, but denied the motion on the federal claim.[2] In Case No. A96A2322, NMAC appeals from the trial court's denial of summary judgment on Stovall's federal claim. In Case No. A96A2323, Stovall cross-appeals from the trial court's grant of summary judgment on its state claim.

## Case No. A96A2322

1. The federal ADDCA provides a cause of action for automobile dealers against automobile manufacturers. 15 USCS § 1221 et seq. In its order denying summary judgment for NMAC on Stovall's ADDCA claim, the trial court found that although NMAC was a finance company and not a manufacturer, summary judgment was inappropriate because a genuine issue of material fact existed as to whether NMAC was the agent of the manufacturer, Nissan Motor Corporation in the U.S.A. (Nissan). NMAC enumerates this finding as error.

15 USCS § 1222 reads in pertinent part: "An automobile dealer may bring suit against any automobile manufacturer engaged in commerce . . . and shall recover the damages by him sustained and the cost of suit by reason of the failure of said automobile manufacturer . . . to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer." 15 USCS § 1221 defines "automobile manufacturer" as "any person, partnership, corporation, association, or other form of business enterprise engaged in the manufacturing or assembling of passenger cars, trucks, or station wagons, including any person, partnership, or corporation which acts for and is under the control of such manufacturer or assembler in

---

[1] Stovall's complaint also asserted claims for tortious interference with an insurance contract and breach of contract. Stovall does not appeal the trial court's grant of summary judgment for NMAC on these counts.

[2] Although neither party raised the issue, state courts are presumed to have concurrent jurisdiction with federal courts to hear federal causes of action unless Congress places exclusive jurisdiction in the federal courts by affirmatively divesting state courts of concurrent jurisdiction. See *Collins v. Dept. of Transp.*, 208 Ga. App. 53, 54 (429 SE2d 707) (1993), citing *Yellow Freight System v. Donnelly*, 494 U. S. 820 (110 SC 1566, 108 LE2d 834) (1990). State court jurisdiction is not addressed in 15 USCS § 1221 et seq., and 15 USCS § 1222 states only that suit "may" be brought in any district court.

connection with the distribution of said automotive vehicles."

The federal courts in Georgia have construed this statute to provide that "under standard agency principles, if a defendant is an agent of the manufacturer, its actions are cognizable under the ADDCA." *Stamps v. Ford Motor Co.*, 650 FSupp. 390, 396 (2) (N.D. Ga. 1986). This is so even where, as here, the finance company is not a party to the franchise agreement between the dealer and the manufacturer. Id. A finance company may be "a stranger to the franchise agreement" and still be liable under the ADDCA if it is the agent of the manufacturer. Id. It is therefore necessary to review what evidence was presented of an agency relationship between Nissan and NMAC.[3]

In support of its motion, NMAC presented affidavit testimony that NMAC and Nissan were not the agents of each other. "The bare assertion or denial of the existence of an agency relationship is a statement of fact when made by one of the purported parties to the relationship." (Citations and punctuation omitted.) *Hussey, Gay &c. v. Ga. Ports Auth.*, 204 Ga. App. 504, 506 (1) (420 SE2d 50) (1992). NMAC having established the absence of an agency relationship, the burden then shifts to Stovall to show evidence to the contrary. On motion for summary judgment, the movant must demonstrate the absence of a genuine issue of material fact, and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). However, a defendant who will not bear the burden of proof at trial may discharge this burden by pointing out an absence of evidence in the record to support the nonmoving party's case. Id. Stovall therefore "cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue." Id.

Stovall presented evidence that NMAC is a wholly owned subsidiary of Nissan, referred to as a "captive finance company." At all times relevant to the parties' dispute, Nissan and NMAC had a subvention agreement under which Nissan paid subsidies to NMAC.

---

[3] Stovall cites *Colonial Ford v. Ford Motor Co.*, 592 F2d 1126, 1129 (10th Cir. 1979), cert. denied, 444 U. S. 837 (100 SC 73, 62 LE2d 48) (1979) for the proposition that NMAC is a manufacturer as a matter of law under the ADDCA because it is the wholly owned finance company of Nissan. However, *Colonial Ford* does not dictate the outcome of this case, as "this Court is not bound by decisions of other states or federal courts except the United States Supreme Court." *Rodgers v. First Union Nat. Bank &c.*, 220 Ga. App. 821, 822 (1) (a) (470 SE2d 246) (1996). Additionally, *Colonial Ford* has been squarely rejected by a federal district court sitting in Georgia. See *Stamps*, supra at 396. While not binding upon this court, decisions of federal district courts sitting in Georgia "can furnish guidelines that may be instructive and worthy of acceptance." *Southern R. Co. v. Malone Freight Lines*, 174 Ga. App. 405, 408 (1) (330 SE2d 371) (1985) (looking for direction to a decision of the United States District Court for the Northern District of Georgia).

These subsidies, in essence, lowered the cost of Nissan vehicles, allowing NMAC to finance the purchase of a Nissan vehicle at a better price than would have been possible without the subsidy. James Rode, the former executive vice-president of NMAC, admitted that the purpose of the subvention agreement, and of NMAC itself, was to support and promote the sale of Nissan vehicles.

"A claim of agency may be proved, as any other fact, by circumstantial evidence. . . . The fact of agency may be established by proof of circumstances, apparent relations, and the conduct of the parties." (Citation and punctuation omitted.) *Collins v. Martin*, 157 Ga. App. 45, 46 (2) (276 SE2d 102) (1981). "[D]irect evidence of an agency relationship is not required." *Stamps*, supra at 396 (2). The threshold for showing agency in this context is low, and even scant factual support may suffice. Id., citing *Olson Motor Co. v. Gen. Motors Corp.*, 703 F2d 284 (8th Cir. 1983), cert. denied, 464 U. S. 894 (104 SC 240, 78 LE2d 231) (1983). Resolving all doubts against NMAC, the facts presented by Stovall create a genuine issue of material fact as to agency, and the trial court properly denied summary judgment for NMAC on this issue.

2. NMAC contends summary judgment should have been granted on Stovall's ADDCA claim because NMAC acted independently of its parent company, Nissan. According to NMAC, because Nissan did not control NMAC to the point that piercing the corporate veil would be justified, NMAC cannot, as a matter of law, be held liable under the ADDCA. In support of its position, NMAC cites *Humana, Inc. v. Kissun*, 221 Ga. App. 64 (471 SE2d 514) (1996) (rev'd 267 Ga. 419 (479 SE2d 751) (1997)) and *Boafo v. Hosp. Corp. of America*, 177 Ga. App. 75 (338 SE2d 477) (1985).

NMAC's argument misunderstands the law creating liability under the ADDCA. As set forth in Division 1, liability can attach under the ADDCA based on an agency relationship between a defendant and a manufacturer. *Stamps*, supra. There is no requirement that the parent control, direct, and dominate the subsidiary to the point that piercing the corporate veil is authorized. See generally *Stamps*, supra. Both *Humana* and *Boafo* are cases wherein the plaintiffs attempted to pierce the corporate veil and hold the parent corporations liable for the acts or omissions of the subsidiaries. By contrast, the case sub judice involves no attempt by Stovall to hold Nissan liable for the acts of NMAC.[4] *Humana* and *Boafo* are thus inapplicable to the facts of this case, and NMAC's reliance upon the concept of piercing the corporate veil is immaterial in this context.

---

[4] Nissan was originally named as a defendant, but was dismissed from the suit by Stovall with prejudice.

3. NMAC claims summary judgment should have been granted on the ADDCA claim because Stovall's counsel admitted at oral argument on the motion for summary judgment that NMAC was not Nissan's agent. Examination of the transcript reveals that Stovall's counsel did not completely disavow any agency relationship between NMAC and Nissan. Instead, he pointed out that NMAC was Nissan's agent for the purposes of the subvention financing arrangement, but that it was NMAC's personnel, and not Nissan's, that allegedly committed the bad faith acts which form the basis of the suit. According to Stovall's counsel, NMAC's personnel were not acting on Nissan's behalf when they "demanded the repurchase of the contracts [in bad faith] by Stovall."

To sustain Stovall's claim against NMAC under the ADDCA, *Stamps* requires only that Stovall show the existence of an agency relationship between NMAC and Nissan, not that every act undertaken by NMAC was done so at the direction of Nissan. See *Stamps*, supra. Although NMAC would have us interpret *Stamps* to require an agent to act at the specific behest of the principal in order for liability to attach to the agent's acts, *Stamps* does not directly address this issue, and construing facts strikingly similar to those of this case, it contains no such requirement. Inasmuch as Stovall's counsel clearly stated to the court that NMAC was Nissan's agent, this enumeration must fail.

4. Stovall's amended complaint includes a claim for attorney fees pursuant to OCGA § 13-6-11. Because the trial court denied summary judgment for NMAC on the ADDCA claim, it likewise denied summary judgment on the attorney fees claim. See *William Goldberg & Co. v. Cohen*, 219 Ga. App. 628, 635 (4) (466 SE2d 872) (1995) (summary judgment properly denied on non-movant's OCGA § 13-6-11 claim where one of non-movant's claims remained pending). NMAC contends Stovall is not entitled to attorney fees as a matter of law.

A prevailing plaintiff may recover both damages and the cost of suit under 15 USCS § 1222, but attorney fees are not included in the definition of "cost of suit" under that section. *Martin Motor Sales v. Saab-Scania of America*, 452 FSupp. 1047, 1059 (9) (S.D.N.Y. 1978), aff'd, 595 F2d 1209 (2nd Cir. 1979). That statute does not prohibit an award of attorney fees by its terms; it simply fails to provide for one. OCGA § 13-6-11 constitutes a vehicle for the collection of attorney fees in this situation, and NMAC cites no authority prohibiting this practice. Stovall also points out in connection with this claim that the underlying action was born out of a contractual dispute involving a retail lease plan. Although Stovall cannot twice recover its expenses of litigation, no authority precludes it from recovering *only* attorney fees should it prevail on this claim, and the trial court properly

denied summary judgment for NMAC on this issue.

### Case No. A96A2323

5. Stovall cross-appeals from the trial court's grant of summary judgment on its claim under the GDDCA. The trial court correctly found that NMAC was not a covered entity under the GDDCA, and summary judgment on this claim was proper.

Unlike the federal ADDCA, which directs liability at manufacturers, the GDDCA directs liability at *franchisors*. OCGA § 10-1-631. All of the definitions for Article 22, in which the GDDCA appears, are contained in OCGA § 10-1-622, which defines "franchisor" as: "[a]ny person, resident or nonresident, who directly or indirectly licenses or otherwise authorizes one or more dealers to use a trademark or service mark associated with a make of motor vehicle in connection with the retail sale of new motor vehicles bearing such trademark or service mark; and . . . [a]ny person who in the ordinary course of business and on a recurring basis sells such new motor vehicles to a dealer for resale." OCGA § 10-1-622 (7) (A) and (B).

The uncontroverted evidence shows that Nissan, not NMAC, licensed Stovall to sell Nissan vehicles. Additionally, NMAC never sold Stovall new Nissan vehicles for resale. There was no franchise agreement between NMAC and Stovall; Stovall's franchise agreement was with Nissan, the manufacturer. As Stovall has pointed to no evidence showing NMAC was a franchisor under OCGA § 10-1-622 (7) (A) and (B), NMAC cannot be liable under the GDDCA. See OCGA § 10-1-631.

Despite the fact that NMAC was not a franchisor as the GDDCA requires, Stovall argues that summary judgment was improper because NMAC was the agent of Nissan, and Nissan is covered under the GDDCA. Although *Stamps*, supra, is authority for this argument under the ADDCA, see Division 1, there is no state counterpart to *Stamps* for the GDDCA. Additionally, because the ADDCA deals with "manufacturers" and the GDDCA deals with "franchisors," the holding of *Stamps* cannot be automatically extended to cover the GDDCA. Unlike the ADDCA, "franchisors" and "manufacturers" are defined separately under the GDDCA, and it cannot be presumed that the legislature intended these terms to be interchangeable. See *Miller v. Ga. Ports Auth.*, 266 Ga. 586, 587 (470 SE2d 426) (1996) ("[c]ourts should apply the plain meaning to all words, except words of art"). Accordingly, *Stamps*' federal "manufacturer" analysis cannot save Stovall's GDDCA agency argument.

6. Stovall enumerates as error the trial court's grant of summary judgment on its claim for OCGA § 13-6-11 litigation expenses in connection with its state claims. However, this enumeration is unneces-

sary and confusing, because the trial court *denied* summary judgment to NMAC on the OCGA § 13-6-11 claim. In any event, an OCGA § 13-6-11 claim cannot be sustained on claims which are no longer pending. See generally *William Goldberg & Co. v. Cohen*, supra. As Stovall's state claims are no longer pending, this enumeration is without merit.

*Judgments affirmed. Birdsong, P. J., and Beasley, J., concur.*

DECIDED JANUARY 21, 1997.

*Gorby & Reeves, Michael J. Gorby, Karen E. Cooper, Levine & Block, Stephen H. Block,* for appellant.

*Starkey, Land & Crowley, G. Roger Land, Robert C. Koski,* for appellee.