**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**September 16, 2014**

# In the Court of Appeals of Georgia

A14A1455. BDO USA, LLP f/k/a BDO SEIDMAN, LLP et al. v.
 COE et al.

RAY, Judge.

BDO USA, LLP, f/k/a BDO Seidman, LLP and Michael Whitacre (collectively, "BDO") filed a petition in the Superior Court of Fulton County to compel arbitration of its disputes with Douglas Coe, Jacqueline Coe, GFLIRB, LLC, DBICHA, LLC, and ALAKE, LLC (collectively, "Coe"). Following a hearing on Coe's motion to dismiss, the trial court found that the issues that BDO claimed to be arbitrable were then pending before an Illinois court which had jurisdiction to hear a motion to compel arbitration and, therefore, in light of OCGA § 9-9-6 (a), it lacked subject matter jurisdiction to consider the merits of BDO's petition. Accordingly, the trial court dismissed BDO's petition without prejudice. On appeal, BDO contends that the

trial court had jurisdiction to consider BDO's petition to compel arbitration under the Federal Arbitration Act, 9 USC § 1 et seq. ("FAA"), which it claims preempted OCGA § 9-9-6 (a). For the reasons that follow, we affirm.

BDO's petition, in pertinent part, alleges that BDO provided tax consulting services to Douglas Coe pursuant to (at least) four written consulting agreements. In 2001 and 2002, Coe entered into a "distressed debt" tax shelter and then claimed deductions on 2001-2007 tax returns for artificial losses generated by the tax shelter. The Internal Revenue Service disallowed the deductions and imposed back taxes, interest, and penalties against Coe.

In the consulting agreements, Coe and BDO agreed to arbitrate any dispute, controversy, or claim arising in connection with the performance or breach of the respective agreements in the city "in which the BDO office providing the relevant Services exists, unless the parties agree to a different locale." BDO alleged that the office providing those relevant services is located in Atlanta, Georgia, but that in contravention of their agreements to arbitrate, Coe sued BDO in the Circuit Court of Cook County, Illinois, asserting various claims arising in connection with the services provided by BDO to Coe under their written agreements. In its petition, BDO asked the trial court to order Coe to arbitrate each of the claims asserted against BDO in the

2

Illinois complaint before an arbitration panel venued in Atlanta and, further, to enjoin Coe from prosecuting the Illinois complaint against BDO and from initiating judicial proceedings against BDO in any other forum. BDO alleged that venue for its action was proper in the Superior Court of Fulton County under both OCGA § 9-9-4 and § 4 of the FAA, 9 USC § 4.

Coe moved to dismiss BDO's petition, contending that under Georgia law the court presiding over the Illinois action, not the Georgia superior court, was the only court that could decide BDO's arbitrability defense to Coe's Illinois claims. Relying on OCGA § 9-9-6 (a), the trial court determined that it lacked jurisdiction over BDO's petition because the issues which BDO claimed to be arbitrable were before the Illinois court, which had had jurisdiction to consider a motion to compel arbitration. The trial court granted Coe's motion and dismissed BDO's petition without prejudice. "The dismissal of an action for lack of subject matter jurisdiction is a question of law that we review de novo." *Babb v. Babb*, 293 Ga. App. 140, 140 (1) (666 SE2d 396) (2008). See *Goddard v. City of Albany*, 285 Ga. 882, 883 (1) (684 SE2d 635) (2009).

1. At issue is whether the trial court erred in dismissing BDO's petition to compel arbitration under authority of OCGA § 9-9-6 (a). BDO contends that the trial

3

court erred in relying on OCGA § 9-9-6 (a) because Georgia courts have jurisdiction to consider a claim filed under § 4 of the FAA, 9 USC § 4 and that, in any event, OCGA § 9-9-6 (a) is preempted by the federal law.

Section 2 of the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 USC § 2. Further, "[t]he FAA applies in state and federal courts to all contracts containing an arbitration clause that involves or affects interstate commerce." *American Gen. Financial Svcs. v. Jape*, 291 Ga. 637, 638 (1) (732 SE2d 746) (2012) ("*Jape*"). Coe does not dispute that the consulting contracts containing the arbitration clauses at issue involve or affect interstate commerce. It follows that the FAA applies to the parties' agreements to arbitrate. See *GF/Legacy Dallas, Inc. v. Juneau Constr. Co.*, LLC, 282 Ga. App. 14, 15-16 (637 SE2d 511) (2006) (as the contract, which included an arbitration clause, undisputably involved interstate commerce, it was governed by the FAA).

OCGA § 9-9-6 (a), which forms part of the Georgia Arbitration Code, OCGA § 9-9-1 et. seq. (the "GAC"), provides that "[a] party aggrieved by the failure of another to arbitrate may apply for an order compelling arbitration," and sets forth the procedures therefore. Similarly, § 4 of the FAA provides in pertinent part:

4

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.

Unlike § 4 of the FAA, however, OCGA § 9-6-6 (a) requires that "[i]f an issue claimed to be arbitrable is involved in an action pending in a court having jurisdiction to hear a motion to compel arbitration, the application shall be made by motion in that action." Id.

Generally, "state courts are presumed to have concurrent jurisdiction with federal courts to hear federal causes of action unless Congress places exclusive jurisdiction in the federal courts by affirmatively divesting state courts of concurrent jurisdiction." *Nissan Motor Acceptance Corp. v. Stovall Nissan, Inc.*, 224 Ga. App. 295, 296, n. 2 (480 SE2d 322) (1997). The FAA has "substantive supremecy," but requires an independent jurisdictional basis for access to a federal forum, such that "state courts have a prominent role to play as enforcers of agreements to arbitrate" (Punctuation omitted.) *Vaden v. Discover Bank*, 556 U.S. 49, 59 (II) (129 SCt 1262, 173 LE2d 206) (2009). BDO argues that notwithstanding that § 4 of the FAA refers to a petition to compel arbitration in "any United States district court," the trial court,

through the exercise of its concurrent jurisdiction over federal causes of action, should have considered BDO's petition under authority of § 4 of the FAA and not dismissed the petition by applying OCGA § 9-6-6 (a).[1]

It is not clear, however, if a state court has jurisdiction over a motion to compel arbitration under § 4 of the FAA. See *Hilton Constr. Co. v. Martin Mechanical Contractors, Inc.*, 251 Ga. 701, 703 (308 SE2d 830) (1983) (finding "the question of the state court jurisdiction of § 4 . . . is unsettled"). As our Supreme Court recently noted in *Jape*, while the United States Supreme Court has recognized "that the FAA creates a body of federal *substantive* law of arbitrability applicable in both federal and state courts, the Supreme Court has not had the occasion to determine whether the FAA's *procedural* provisions are applicable in state courts." *Jape*, supra at 640 (2). See *Southland Corp. v. Keating*, 465 U. S. 1, 16, n. 10 (III) (104 SCt 852, 79 LE2d 1) (1984) ("In holding that the Arbitration Act preempts a state law that withdraws the power to enforce arbitration agreements, we do not hold that §§ 3 and 4 of the [FAA] apply to proceedings in state courts"). In particular, our Supreme Court

---

[1] BDO asserts that it was unable to bring this action in federal court in Atlanta because there was no diversity jurisdiction under 28 USC § 1332 and that a federal court in Illinois could not order arbitration to take place outside its own district. See 9 USC § 4 ("The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.").

6

pointed out that the United States Supreme Court "has acknowledged . . . that the procedural provisions found in §§ 3 and 4 of the Act appear to apply by their terms only in federal court." *Jape*, supra at 641 (2). See *Volt Information Sciences v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U. S. 468, 477, n.6 (109 SCt 1248, 103 LE2d 488) (1989) (noting that § 4 of the FAA refers to "any United States district court").

In view of the foregoing, our Supreme Court in *Jape* suggests that the procedural provisions found in §§ 3 and 4 of the FAA do not apply to state court proceedings.[2] Further, the GAC "is a body of procedural law setting forth the public policy of this State with respect to the enforcement of agreements to arbitrate." *Continental Ins. Co. v. Equity Residential Props. Trust*, 255 Ga. App. 445, 445 (565 SE2d 603) (2002). Georgia courts generally apply Georgia law to procedural matters.

---

[2] However, we do not think that our Supreme Court made a definitive or complete ruling on the issue. For instance, at least with respect to § 3 of the FAA, our Supreme Court has also found, citing *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U. S. 1, 26 (103 SCt 927, 74 LE2d 765) (1983), that "state courts as well as federal courts are obliged to grant stays of arbitration pursuant to § 3 . . . ." *Hilton Constr. Co.*, supra at 703.

7

See, e. g., id. (noting that "[t]he rule of lex fori dictates that Georgia courts will apply Georgia law governing procedural or remedial matters").[3]

*Jape* also determined that OCGA § 5-6-34 (b), a Georgia procedural law pertaining to interlocutory appeals, governed appellate jurisdiction of the underlying appeal, notwithstanding that OCGA § 5-6-34 (b) was inconsistent with 9 USC § 16 (a) (1) (B) of the FAA, which also addressed the availability of appeal, and notwithstanding that the parties had agreed that the FAA governed their agreement.[4] Our Supreme Court did so, however, only upon concluding that OCGA § 5-6-34 (b) was not preempted by the FAA. *Jape*, supra at 639-644 (2). Accordingly, we conclude that the pertinent state-law procedural provision, in this case OCGA § 9-9-6 (a),

---

[3] In this case, the consulting agreements contemplated that any arbitration would be in accordance with the laws of the State of New York, but neither BDO or Coe suggest that the law of New York governed whether the trial court had subject matter jurisdiction over the petition. See, e. g., *Continental Ins. Co.*, supra at 445-446 (applying GAC, the procedural law of Georgia, notwithstanding that the contract was governed by Illinois law). We note, however, that as in Georgia, New York law provides: "If an issue claimed to be arbitrable is involved in an action pending in a court having jurisdiction to hear a motion to compel arbitration, the application shall be made by motion in that action." Section 7503(a) of the New York Civil Practice Law and Rules.

[4] BDO points out that the underlying motion to compel arbitration in *Jape* was asserted under § 4 of the FAA, see *Jape*, supra at 638, but we do not think it follows from the Court's analysis, which pertained to appellate jurisdiction, that *Jape* necessarily approved of the superior court's jurisdiction to apply § 4 of the FAA.

8

applies to BDO's petition unless the Georgia law is otherwise preempted by the FAA. See *American Gen. Financial Svcs. v. Vereen*, 282 Ga. App. 663, 666 (639 SE2d 598) (2006) (holding that "procedural rules established by a state for the arbitration process that do not undermine the purposes and objectives of the FAA are not preempted") (citation and punctuation omitted); *St. Fleur v. WPI Cable Systems/Mutron*, 879 NE2d 27, 33 (Mass. 2008) (finding that the "Massachusetts counterpart [to 9 USC § 4] . . . applies unless that statute undermines the purposes of the Federal Act").

The FAA, which lacks an express preemptive provision, "does not reflect a congressional intent to occupy the entire field of arbitration," and "its provisions will preempt state law only to the extent it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." (Citation and punctuation omitted.) *Jape*, supra at 639 (2). The FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt*, supra at 478. Thus, the FAA will pre-empt "state laws which require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." (Citation and punctuation omitted.) Id. Here, OCGA § 9-9-6 (a) contemplates that if a party claims that an issue is arbitrable and

the issue is otherwise pending in a court having jurisdiction to hear a motion to compel arbitration, the party must pursue its arbitration rights in the pending action, and not a separately filed action. See *Odion v. Avesis, Inc.*, __ Ga. App. __, *13-14 (3) (c) (Case No. A14A0264, decided June 3, 2014) (noting that "the plain language of [OCGA § 9-6-6 (a)] makes a motion to compel arbitration optional, but directs that a party opting to file such a motion do so in a pending action, if such an action exists"). As such, OCGA § 9-9-6 (a) is a state procedural rule that "determine[s] only the efficient order of proceedings; it [does] not affect the enforceability of the arbitration agreement itself." *Doctor's Assocs., Inc. v. Casarotto*, 517 U. S. 681, 688 (II) (116 SCt 1652, 134 LE2d 902) (1996).

Unlike the Georgia statute at issue in *Jape*, OCGA § 9-9-6 (a) cannot be said to be "arbitration neutral" inasmuch as it expressly concerns agreements to arbitrate. The United States Supreme Court has found, however, that the FAA does not "prevent[] the enforcement of agreements to arbitrate under different rules than those set forth in the Act itself." *Volt*, 489 U. S. at 478. Further, the Georgia law may affect where the parties litigate the merits of BDO's arbitration defense, but it does not undermine the substantive directive of the FAA that arbitration agreements be enforced. Accordingly, we conclude that OCGA § 9-9-6 (a), to the extent it controls

10

whether a Georgia court is the appropriate forum for pursuing a motion to compel arbitration, is not preempted by the FAA. See *Jape*, supra at 645 ("It is one thing to find that Congress intended to impose federal substantive or procedural rules on a type of case that a State has opened its courts to hear. It would be quite another thing to find that Congress intended to require a State to open its courts to hear such a case.") (Nahmias, J., concurring). It follows that the trial court did not err in considering whether under the standards of OCGA § 9-9-6 (a) it could reach the merits of BDO's petition.

2. BDO argues that if OCGA § 9-9-6 (a) is not preempted by the FAA, it nevertheless does not apply to BDO's petition. BDO maintains that OCGA § 9-9-6 (a) does not apply to proceedings beyond the territorial limits of the State of Georgia. However, OCGA § 9-9-6 (a) refers to issues which are claimed to be arbitrable that are pending in a "court," not pending in a "Georgia court." As the trial court noted, "[w]here the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden. In the absence of words of limitation, words in a statute should be given their ordinary and everyday meaning." (Citation and punctuation omitted.) *Six Flags Over Ga. II, L.P. v. Kull*, 276 Ga. 210, 211 (576 SE2d 880) (2003).

11

BDO further argues that the Illinois court is not a court having jurisdiction to hear a motion to compel arbitration for purposes of OCGA § 9-9-6 (a). The record shows that the Illinois trial court found that "it has the power to determine whether this should go to arbitration."[5] Under Illinois law, "[t]he question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is 'an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." (Citation and punctuation omitted; emphasis in original.) *Hollingshead v. A.G. Edwards & Sons, Inc.*, 920 NE2d 1254, 1258 (Ill. App. 2009). See also *Phoenix Ins. Co. v. Rosen*, 949 NE2d 639, 647 (Ill. 2011) ("[P]ublic policy in Illinois favors arbitration."). And "[w]here there is a valid arbitration agreement and the parties' dispute falls within the scope of that agreement, arbitration is mandatory and the trial court must compel it." *Hollingshead*, supra at 1260. BDO argues that it was required by Illinois authority to bring the petition to compel in the jurisdiction where the arbitration is to take place, which location BDO contends will ultimately be Fulton County, Georgia. But, BDO only establishes that an Illinois court could not order arbitration to take place in Illinois where that location was

---

[5] Coe also asserts, and BDO acknowledges, that BDO moved to stay the Illinois action in favor of arbitration after filing this appeal.

12

inconsistent with the parties' agreement to arbitrate, see *Peregrine Financials and Securities v. Hakakha*, 788 NE2d 263, 268 (Ill. App. 2003), not that the Illinois court would not have jurisdiction to consider a motion to compel when the merits of issues claimed to be arbitrable were before that court. Compare 710 ILCS 5/2 (governing proceedings to compel or stay arbitration).

Lastly, BDO contends that compliance with OCGA § 9-9-6 (a) is not a jurisdictional defect under the express terms of the statute and the trial court was therefore not required to dismiss its petition. However, in light of the pending Illinois action, the trial court could not reach the merits of BDO's petition to compel arbitration, and so the trial court's dismissal of the petition without prejudice was appropriate. See *Odion*, supra at *14 (3) (d) (as the trial court did not, and could not, reach the merits of the claims, dismissal without prejudice was the appropriate remedy); *Yates v. CACV of Colo., LLC*, 303 Ga. App. 425, 433 (3) (693 SE2d 629) (2010) (as the counterclaim was not permitted, the trial court should have dismissed it without prejudice).

*Judgment affirmed. Andrews, P. J., and McFadden, J., concur.*