A89A1872. DERBYSHIRE et al. v. UNITED BUILDERS SUPPLIES, INC.
(392 SE2d 37)

BEASLEY, Judge.

Consideration of the issues involves the interlocking relationship

of appellant John Derbyshire and certain corporations he formed and the extent to which these corporate entities may be disregarded in this case. Derbyshire owns 100 percent of the stock in three corporations, Thermocon International, Inc., and Durlin & Associates, Inc., (d/b/a Weathertite Contracting Company), and Jeslan Enterprises, Inc. In turn Jeslan Enterprises, Inc., completely owns Stanley Steele Company, Inc., (d/b/a Thermocon Southeast) which controls National Boric Acid Corporation.

All were defendants in an action brought by United Builders Supplies, Inc., seeking recovery under a lease agreement and for damages to the premises owned by United Builders. Defendants appeal after a jury verdict in favor of plaintiff.

On February 15, 1984, Stanley Steele Company, then an independent business, leased premises in Columbus from United Builders Supplies. The agreement was for three years ending January 31, 1987, with an option for three three-year additional terms. The lease also contained a provision for assignment and for payment of attorney fees in the event of default.

In 1985 and 1986 Richard Lane, Vice-President of United Builders, met with John Derbyshire who informed him that Derbyshire intended to move his insulation business, under the name Thermocon, into the Columbus area as part of a plan for national expansion. Derbyshire indicated an interest in purchasing Stanley Steele, extending the lease and later buying the property owned by United Builders.

In September 1986 Derbyshire formed a wholly-owned corporation, Jeslan Enterprises, for the purpose of acquiring 100 percent interest in Stanley Steele. On September 25 Jeslan Enterprises purchased all the stock of Stanley Steele.

On October 28, Keith Wright, signing as Secretary-Treasurer under a letter head styled "Thermocon" with the Columbus leased premises address, informed United Builders' Lane that "we would like to exercise our option to extend the lease for an additional term of three years as indicated in paragraph 25 of the original lease," bringing it to January 31, 1990.

In 1987 lease payments were delinquent and Lane met with certain corporate officers of Thermocon and Stanley Steele and also spoke with Derbyshire over the telephone about bringing the payments current. Lane understood that Derbyshire and Thermocon were responsible for the rent and informed the officials that he was looking to them for payment. He received a letter on May 14 under the name of Thermocon Southeast, signed by Keith Wright, setting forth a payment plan. Subsequently payments stopped and Lane contacted Derbyshire who said he would not be pressured about the rent.

During this time the building was occupied or being used by each of the defendant corporations and several of the officers worked for

more than one corporation. Besides his exclusive ownership and control of the three principal corporations, Derbyshire was president of Stanley Steele, Thermocon International and Jeslan Enterprises. Stanley Steele and National Boric Acid issued paychecks out of the Columbus location.

On November 7 the premises were vacated and the lease agreement abandoned. Extensive damages were done to the premises when defendants moved out and two large vats of sulfuric acid were left behind. United Builders expended almost $14,000 in repairs and renovations in order to make the property suitable for leasing. Neither Derbyshire nor his corporations gave any notice to United Builders. Derbyshire refused to respond to any inquiries about the damages or of future intentions with regard to the lease.

United Builders sued in December. Defendants answered; Derbyshire, Thermocon International and Durlin & Associates d/b/a Weathertite moved for summary judgment; Derbyshire and Thermocon moved to dismiss on jurisdictional grounds. Discovery was completed and the motions were denied.

Plaintiff filed an amended and recast complaint naming Derbyshire and the corporations as they appear in the initial paragraph of this opinion. A jury returned a verdict in favor of plaintiff for $125,000. Judgment was entered thereon and appeal was taken. The judgment was then modified to award $72,381.60 in lost rent, $10,857.13 for attorney fees, $5,366.26 for damages to the property and $8,000 for expenses to make the premises rentable. Appeal also from that judgment followed.

1. Derbyshire, Thermocon and Jeslan assign error on the denial of their motions to dismiss for lack of jurisdiction. Jeslan must be eliminated from consideration because it did not file a motion to dismiss on this basis. As to Derbyshire and Thermocon their motions were denied on the grounds, as found by the trial court in separate orders as to each, that "there remain genuine issues as to material facts regarding whether this Court has jurisdiction over this defendant."

This might be a proper ruling to make on motion for summary judgment, but a motion based on lack of jurisdiction targets a matter in abatement, not the merits of a case. *Behar v. Aero Med Intl.*, 185 Ga. App. 845 (1) (366 SE2d 223) (1988); *Ogden Equip. Co. v. Talmadge Farms*, 232 Ga. 614 (208 SE2d 459) (1974). Summary judgment is appropriate only when ascertaining whether the merits of a case should reach a jury. *International Indem. Co. v. Blakey*, 161 Ga. App. 99, 101 (1) (289 SE2d 303) (1982).

When ruling on a motion to dismiss based upon jurisdictional grounds, the trial court must make the determination acting as the trier of fact. *Big Canoe Corp. v. Williamson*, 168 Ga. App. 179, 180

(308 SE2d 440) (1983); *Montgomery v. USS Agri-Chem. Div.*, 155 Ga. App. 189, 190 (1) (270 SE2d 362) (1980). Its evaluation rests on where the preponderance of evidence lies, not necessarily on whether the issue may be decided as a matter of law. *Barrow v. Gen. Motors Corp.*, 172 Ga. App. 287, 288 (2) (322 SE2d 900) (1984). A holding that issues of fact remained would necessitate the resolution of those facts and a determination of jurisdiction by the trial court; it would not be cause for submission to a jury.

The effect of the trial court's ruling was to avoid its responsibility to decide the jurisdictional question. OCGA §§ 9-11-12 (d) and 9-11-43 (b); *Ogden Equip. Co.*, supra; *Montgomery*, supra at 190; *Myers v. McLarty*, 150 Ga. App. 432, 433 (258 SE2d 56) (1979). We do not construe the ruling as an order that the determination be deferred until trial under OCGA § 9-11-12 (d) (*Sherwood Mem. Park v. Bryan*, 142 Ga. App. 664 (236 SE2d 903) (1977)), because no further ruling on the issue was ever made. It was left unresolved. The right for any reason principle does not rise to save the day because a judgment based on an erroneous legal conclusion or theory is reversible error. *Universal Scientific v. Wolf*, 165 Ga. App. 752, 753 (2) (302 SE2d 616) (1983); *Ayers v. Yancey Bros. Co.*, 141 Ga. App. 358, 361 (2) (233 SE2d 471) (1977).

The ruling on the motions must be reversed and remanded for a hearing and judgment predicated on the relevant principles of law. If the court finds no jurisdiction as to Derbyshire and Thermocon, the final judgment rendered against them must fall.

2. (a) Because they were not signatories on the lease, defendants Derbyshire, Thermocon, Jeslan, Durlin and National Boric Acid contend there is no basis for holding them liable.

Evidence that defendant corporations jointly occupied the building gives a sound reason for finding them jointly liable for the physical damages to the building. Whether they all may be liable on the lease is another matter. Their using the premises does not per se impose liability upon them for the rent. A sublessee incurs liability to the lessor for the rent only where he assumes liability not merely because of his status. 49 AmJur2d 488, Landlord & Tenant, § 509, and cases cited. Unless they were joint tenants or cotenants they would not be liable for the rent.

Two reasons would sustain liability here. First, the letter from Thermocon, signed by Keith Wright, indicates that Thermocon and Derbyshire were exercising the right to extend the lease although there was no written assignment of the lease to those two. Performance by one party and acceptance by the other or such part performance as would render it a fraud on the part of the party refusing to comply would establish an enforceable contract even though there was no compliance with the Statute of Frauds. OCGA § 13-5-31 (2) &

(3). This theory for sustaining the verdict, while viable, was not presented to the jury.

Second, the individual defendant and the corporations, in addition to Stanley Steele, could be impressed with responsibility for complying with the obligations of the lease and particularly its requirements for payment of rent by the process of piercing the corporate veil or disregarding the corporate entity.

An inherent purpose of incorporation is insulation from liability. A corporation possesses a legal existence separate and apart from that of its officers and shareholders so that the operation of a corporate business does not render officers and shareholders personally liable for corporate acts. *Raynor v. American States Ins. Co.*, 176 Ga. App. 564, 565 (1) (337 SE2d 43) (1985); *Trans-State v. Barber*, 170 Ga. App. 372, 374 (1) (317 SE2d 242) (1984).

Using terminology such as "piercing the corporate veil," "looking at the substance rather than at the form," or "disregarding the corporate fiction," our courts have disregarded the separate entity of a corporation where it has overextended its privileges. *Bone Constr. Co. v. Lewis*, 148 Ga. App. 61, 63 (4) (250 SE2d 851) (1978). To activate this cut-through, there must be abuse of the corporate form. "Sole ownership of a corporation by one person or another corporation is not a factor, . . . and neither is the fact that the sole owner uses and controls it to promote his ends." *Amason v. Whitehead*, 186 Ga. App. 320, 322 (367 SE2d 107) (1988).

The law intervenes when the separate personalities of the corporation and its owner no longer exist. The question is whether the corporation serves as the alter ego or business conduit of its owner. To establish this, "it must be shown that the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and to adhere to the doctrine of corporate entity would promote injustice or protect fraud." *Trans-American Communications v. Nolle*, 134 Ga. App. 457, 460 (1b) (214 SE2d 717) (1975).

"When litigated, the issue of 'piercing the corporate veil' is a jury question." *Fla. Shade &c. Growers v. Duncan*, 150 Ga. App. 34, 35 (256 SE2d 644) (1979). For the issue to be submitted to a jury there must be evidence that the corporate arrangement was a sham, used to defeat justice, to perpetrate fraud or to evade statutory, contractual or tort responsibility. *Keller Bldg. Prods. v. Young*, 137 Ga. App. 682, 685 (1) (224 SE2d 815) (1976). Accord *Williams Plaza v. Sedgefield Sportwear Div.*, 164 Ga. App. 720, 721 (297 SE2d 342) (1982); *Farmers Warehouse v. Collins*, 220 Ga. 141, 150 (2d) (137 SE2d 619) (1964).

The proof offered was somewhat ambiguous and certainly not

free from doubt, but it indicated Derbyshire and his family of corporations acted as a unit. Derbyshire referred to his corporations in an interchangeable manner and in testifying had difficulty remembering what corporation did what and which corporation had which officers. His confusion was understandable because some of them worked for more than one corporation and because Derbyshire was also the president of Stanley, Thermocon and Jeslan as well as the sole owner of three corporations. In dealings with United Builders the corporations appeared not as separate units but as an amalgamated whole. The acceptance of the option for an extension of the lease was on "Thermocon" letterhead and stated "we would like to exercise our option." The corporations functioned together to produce a common product and of course used the same address and were housed in the same building, the leased premises.

Derbyshire apparently employed the corporations as his alter egos or as business conduits. When used as a subterfuge to work an injustice, this furnishes grounds which in equity and good conscience would justify the disregard of their separate entities.

Applying the rule that an appellate court construes the evidence in favor of the verdict, *Wright v. Thompson*, 236 Ga. 655, 659 (V) (225 SE2d 226) (1976), there was some evidence to sustain the finding of the jury that "we" meant "we."

(b) Having determined there were grounds to disregard the corporate entities, the Statute of Frauds issue becomes moot as it is immaterial which of Derbyshire's alter egos actually executed the lease extension.

3. Defendants moved for directed verdict as to attorney fees under the contract on the grounds that plaintiff failed to comply with OCGA § 13-1-11. On appeal they enumerate as error the denial of their joint motion. Plaintiff contended below that it was not necessary to give notice or otherwise comply with the Code section. It now asserts that if the Code section were applicable then there was substantial compliance, citing *Carlos v. Murphy Warehouse Co.*, 166 Ga. App. 406, 408 (2) (304 SE2d 439) (1983).

The provision for attorney fees in the lease agreement is governed by OCGA § 13-1-11. *Kasum Communications v. CPI North Druid Co.*, 135 Ga. App. 314 (217 SE2d 492) (1975). Accord *Reach Out v. Capital Assoc.*, 176 Ga. App. 585, 586 (2) (336 SE2d 847) (1985); *Burgess v. Clermont Properties*, 141 Ga. App. 112 (2) (232 SE2d 627) (1977). While substantially complying with the code section is sufficient, it is necessary that the essentials as described in *General Elec. Credit Corp. v. Brooks*, 242 Ga. 109, 119 (249 SE2d 596) (1978), be met. Considering the complaint as providing notice, nothing therein warned defendants they had 10 days from receipt of notice to pay the sum owed and avoid attorney fees. A directed ver-

dict on this issue was mandated.

Direction is given that attorney fees be written off.

*Judgments affirmed in part and reversed in part; and case remanded with direction. Carley, C. J., and McMurray, P. J., concur.*

DECIDED MARCH 13, 1990.

*Bradford C. Dodds, John W. Denney,* for appellants.
*Kenneth M. Henson, Jr.,* for appellee.