**SECOND DIVISION
ANDREWS, P. J.,
MILLER, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**March 16, 2016**

# In the Court of Appeals of Georgia

A15A2346, A15A2347. COBRA 4 ENTERPRISES v. POWELL
  NEWMAN et al.; and vice versa.

MILLER, Presiding Judge.

These consolidated cases arise from an automobile accident that injured Karen
Powell-Newman. Danny Ayala was driving a truck leased to his employer Yellow
Ribbon Tree Experts ("Yellow Ribbon") at the time of the accident. Ayala was
arrested and charged with various traffic violations. Powell-Newman and her husband
Stephen Newman (collectively "the Newmans") filed a complaint against Ayala,
Yellow Ribbon, and Yellow Ribbon's owner Gary Robertson, alleging negligence;
negligent hiring, supervision, retention, and entrustment; and liability under a theory
of respondeat superior. They also named as a defendant Cobra 4 Enterprises ("Cobra
4"), another company owned by Robertson and the owner of the truck Ayala had been

driving. Cobra 4 moved for summary judgment, arguing that it could not be held vicariously liable because it had no control over the truck at the time of the accident.[1] It further argued that the fact that Robertson owned both Yellow Ribbon and Cobra 4 did not create liability. The trial court considered three bases for Cobra 4's potential liability: as an alter ego of Yellow Ribbon; for engaging in a joint venture with Yellow Ribbon; and for negligently entrusting its truck to Yellow Ribbon. The trial court concluded that there was no evidence to support a joint venture because Cobra 4 did not have any right to control the conduct of Yellow Ribbon. The trial court found, however, that the evidence supported a claim of negligent entrustment and alter ego, and it denied summary judgment on these claims ("the 2014 order").

Thereafter, Robertson, Yellow Ribbon, Ayala, and their insurance company entered into a limited liability release ("the Release") with the Newmans in which the Newmans accepted $131,506.12 for their claims against Robertson, Ayala, and Yellow Ribbon.

Cobra 4 then renewed its motion for summary judgment, seeking to enforce the Release. Cobra 4 argued that the trial court found that it was an agent of Yellow

---

[1] Robertson also filed a motion for summary judgment, which the trial court granted in part. That order is not at issue on appeal.

2

Ribbon and therefore a party to the Release. The trial court denied the motion ("the 2015 order"), finding that the 2014 order did not conclude that Cobra 4 was an agent of Yellow Ribbon. Rather, in the 2014 order, the trial court simply concluded that there was enough evidence for the jury to consider whether Cobra 4 was an alter ego of Yellow Ribbon. The trial court explained that "agent" was not synonymous with "alter ego," and thus the Release did not cover Cobra 4. Cobra 4 sought interlocutory review, and this Court granted its application. These appeals followed.

In case number A15A2347, the Newmans argue that the trial court erred in finding that Yellow Ribbon and Cobra 4 were not a joint venture. In case number A15A2346, Cobra 4 argues that the trial court erred in finding that it could have been an alter ego of Yellow Ribbon and that it could be liable under a theory of negligent entrustment. It also argues that the trial court erred in finding it was not a party to the Release. For the reasons that follow, we affirm in part, reverse in part, and remand the cases with direction.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

3

(Punctuation and citation omitted.) *Carter v. Scott*, 320 Ga. App. 404, 405 (750 SE2d 679) (2013).

So viewed, the evidence shows that Robertson is the sole owner of Yellow Ribbon, a Limited Liability Company formed in 2006 to provide arboricultural services. In 2009, Robertson formed Cobra 4 to provide a leasing company for Yellow Ribbon's trucks. Cobra 4 purchased Yellow Ribbon's vehicles for $1 each and leased the trucks back to Yellow Ribbon for $2,500 per month. Robertson is the sole shareholder and owner of Cobra 4, and the only member of its board of directors. Although Cobra 4's articles of incorporation require the corporation to hold shareholder meetings and to elect officers, Cobra 4 has done neither.

The principal office of both Cobra 4 and Yellow Ribbon is Robertson's home address, and Robertson is the registered agent for both corporations. It is undisputed that Robertson formed Cobra 4 to protect his assets – the equipment – from judgments against Yellow Ribbon. Robertson kept the finances of the two companies separate; each had its own bank account, and Robertson did not pay any expenses for one company from the other's funds. Yellow Ribbon employed a secretary, who was not paid out of Cobra 4 funds. And there was some evidence that, in the past, Cobra 4 had leased vehicles to a company Robertson did not own. Nevertheless, there was

4

some overlap of the work. When Yellow Ribbon needed another truck, Cobra 4 would buy one. Robertson admitted that some tasks were done "50/50" for both Cobra 4 and Yellow Ribbon.

Although Cobra 4 owned the trucks, it had no right of control over the vehicles while they were leased to Yellow Ribbon. The Lease and Property Agreement ("the Agreement") between Cobra 4 and Yellow Ribbon required Yellow Ribbon to maintain insurance against personal injuries up to $500,000 and to indemnify Cobra 4. The limits of the policy maintained by Yellow Ribbon, however, was $150,000, and Cobra 4 had no insurance of its own. Robertson could not explain why the insurance coverage was less than required under the terms of the Agreement. Instead, Robertson testified that Yellow Ribbon was to "take care of" this claim against Cobra 4, "just like the paperwork says."

Ayala worked for Yellow Ribbon on a day-to-day basis cleaning up tree branches. Ayala was not hired as a driver and, therefore, Robertson did not check Ayala's driving record when he hired Ayala. Ayala did not have a Georgia driver's license and did not drive any of Yellow Ribbon's trucks before the day of the accident. On that day, Ayala's supervisor allowed Ayala to drive the truck from one work site to another.

Notably, the record on appeal does not contain any information regarding Powell-Newman's injuries or the damage to her car. Robertson testified that he remembered Powell-Newman walking around after the accident. She had her arm in a sling, but she did not leave the accident site in an ambulance.

Generally, one of the purposes of incorporating a business is insulation from liability. *Derbyshire v. United Builders Supplies, Inc.*, 194 Ga. App. 840, 844 (2) (a) (392 SE2d 37) (1990). And "[a] cardinal precept of corporate law is that corporations are separate legal entities from their shareholders, officers, directors, and employees. . . . even in the situation in which a corporation is owned solely by one person." (Citations omitted.) *Dept. of Transp. v. McMeans*, 294 Ga. 436, 437 (754 SE2d 61) (2014). Courts, therefore, should be cautious about ignoring the corporate structure. Id. at 437-38. The corporation shields its members from liability unless there is a reason to "pierce the corporate veil." Id. at 437. A plaintiff may rely on three intertwined theories in an attempt to pierce the veil: (1) alter ego; (2) agency; and (3) joint venture. *Kissun v. Humana, Inc.*, 267 Ga. 419, 419-20 (479 SE2d 751) (1997).[2]

---

[2] The Newmans did not specifically allege an agency relationship as the basis for holding Cobra 4 liable. They argued only that Cobra 4 was an alter ego of and engaged in a joint venture with Yellow Ribbon.

Case Number A15A2347

1. The Newmans argue that the trial court erred in finding that Cobra 4 and Yellow Ribbon were not engaged in a joint venture. We disagree.

A joint venture arises "where two or more parties combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control (provided the arrangement does not establish a partnership), so as to render all joint venturers liable for the negligence of the other." (Citation omitted.) *Kissun*, supra, 267 Ga. at 420. The right to exercise mutual control is a crucial part of a joint venture. *Williams v. Chick-fil-A, Inc.*, 274 Ga. App. 169, 170 (617 SE2d 153) (2005). "For a joint venture to exist, there must be not only a joint interest in the purpose of the enterprise but also an equal right, express or implied, to direct and control the conduct of one another in the activity causing the injury. . . ." (Citation and punctuation omitted.) Id.

Here, the record is devoid of any evidence that Cobra 4 had any right to direct or control the conduct of Yellow Ribbon. There was no commingling of funds, the

7

companies had separate bank accounts, and Cobra 4 had no right of possession of any of its trucks while they were leased to Yellow Ribbon. We therefore find that the trial court properly granted summary judgment on the joint venture claim.

Case Number A15A2346

2. Cobra 4 argues that the trial court erred in finding that there was a factual question for the jury regarding whether it could have been an alter ego of Yellow Ribbon. We agree.

"Under the alter ego doctrine, equitable principles are used to disregard the separate and distinct legal existence possessed by a corporation where it is established that the corporation served as a mere alter ego or business conduit of another." (Citations omitted.) *Kissun*, supra, 267 Ga. at 419-20. Under Georgia law, piercing the corporate veil requires some evidence of abuse of the corporate form, and sole ownership by one person is not a factor. *Amason v. Whitehead*, 186 Ga. App. 320, 322 (367 SE2d 107) (1988). Rather, there must be evidence that the defendant "disregarded the separateness of legal entities by commingling on an interchangeable or joint basis or confusing the otherwise separate properties, records or control." (Citation and punctuation omitted.) Id.; see also *Farmers Warehouse of Pelham, Inc. v. Collins*, 220 Ga. 141, 149 (2) (d) (137 SE2d 619) (1964) (declining to apply alter

8

ego doctrine where there was no evidence that the companies were used as a subterfuge, and finding that to ignore the corporate form would work an injustice). Where there is no evidence that the corporate arrangement is a sham that was designed to defeat justice, perpetuate fraud, or evade statutory, contractual, or tort liability, the issue of alter ego liability is not a jury question. *Derbyshire*, supra, 194 Ga. App. at 844 (2) (a).

There can be no dispute that the Newmans could have pierced the veil of either Cobra 4 or Yellow Ribbon to hold Robertson liable. Robertson was the sole owner of each corporation, he funded them initially with his own money, and he used them to protect his assets. Robertson under-insured Yellow Ribbon and Cobra 4, and he sold Yellow Ribbon's trucks to Cobra 4 for only a dollar a piece. Moreover, Robertson admittedly ignored corporate formalities with respect to Cobra 4. He failed to hold shareholder meetings or elections of corporate officers. Under these facts, it is clear that the Newmans could have pierced the veil to get to Robertson. See *Amason*, supra, 186 Ga. App. at 322. Importantly, however, the Newmans chose to settle their claims against Robertson, and he is no longer a defendant in this action.

9



Because they can no longer hold Robertson liable, the Newmans now attempt to impose liability on Cobra 4 by piercing the veil horizontally between Cobra 4 and its sibling corporation Yellow Ribbon. Georgia courts have never applied the alter ego doctrine to impose liability in this manner. Moreover, other courts that have considered this issue have refused to impose liability in such circumstances. *See, e.g.,* *Madison County Communications Dist. v. Centurylink, Inc.*, CV-12-J-1768-NE, 2012 WL 6685672, *4 (N.D. Ala. 2012) (finding no grounds to pierce the veil between sibling companies under Alabama law because there was no evidence that one corporation completely dominated and controlled the other); *Minno v. Pro–Fab, Inc.*,

10

121 Ohio St. 3d 464, 468 (905 NE2d 613) (2009) ("[A] plaintiff cannot pierce the veil of one corporation to [impose liability] on its sister corporation.").

The Newmans focus on Robertson's failure to adhere to the corporate form as a basis to establish that Cobra 4 was an alter ego of Yellow Ribbon. This is not sufficient to impose liability on Cobra 4 as a sibling corporation to Yellow Ribbon. Although the evidence shows that Robertson failed to adhere to corporate formalities with respect to Cobra 4, this fact is relevant only to piercing Cobra 4's veil to hold Robertson liable.

We cannot conclude that Yellow Ribbon and Cobra 4 were alter egos because there was no evidence that the two companies were interchangeable entities. There was no evidence of any commingling of assets between the two corporations.[3] Cobra 4 had no right of control or possession over the trucks leased to Yellow Ribbon, and Cobra 4 leased vehicles to a company Robertson did not own. The two corporations had separate bank accounts and different accountants. Neither corporation paid any

_____

[3] In their reply brief, the Newmans note that Yellow Ribbon was under insured, which was a breach of the Agreement, but that Cobra 4 did not seek to terminate the Agreement or retake possession of its trucks. We do not consider arguments made for the first time in a reply brief. *McReynolds v. The Prudential Ins. Co. of America*, 276 Ga. App. 747, 751 (1) (b) (624 SE2d 218) (2005). Even if we were to consider this argument, such evidence is relevant only to piercing the veil against Robertson, not Cobra 4.

11

expenses for the other, and Robertson's secretary at Yellow Ribbon was not paid out of Cobra 4 funds. In other words, there was no evidence that the two corporations commingled their assets or otherwise confused their separate records or control. *Amason*, supra,186 Ga. App. at 322. Therefore, after a thorough review, we are constrained to conclude that there is no evidence in this case to raise a question of fact for the jury regarding whether Cobra 4 was an alter ego of Yellow Ribbon. *Derbyshire*, supra, 194 Ga. App. at 844 (2) (a).

We recognize that there was some overlap between the two companies. In the absence of any evidence of commingling or abuse of the corporate entity by Cobra 4 and Yellow Ribbon, however, we cannot find Cobra 4 to be Yellow Ribbon's alter ego. *Collins*, supra, 220 Ga. at 150 (2) (d) (declining to apply alter ego doctrine where the evidence was insufficient to show that separation between the corporation and the individual did not exist and allowing the corporate fiction would promote injustice or protect fraud); see also *Florida Shade Tobacco Growers, Inc. v. Duncan*, 150 Ga. App. 34 (256 SE2d 644) (1979) (finding no evidence that the corporation was a sham so as to justify ignoring the separation of the entities). Simply put, although there was plenty of evidence to enable the Newmans to pierce the veil to hold Robertson liable, under the facts of this case, there is no basis to extend the alter ego doctrine to cover

12

sibling companies. Therefore, we conclude that the trial court erred when it denied Cobra 4's summary judgment motion on alter ego grounds.

3. Cobra 4 next argues that the trial court erred in finding that it could be liable under a theory of negligent entrustment because there was no evidence that Cobra 4 had the right to control the conduct of Yellow Ribbon and, in the absence of any such relationship, there can be no vicarious liability.[4] We agree.

"Under the doctrine of negligent entrustment, a party is liable if he entrusts someone with an instrumentality, with actual knowledge that the person to whom he has entrusted the instrumentality is incompetent by reason of his age or inexperience, or his physical or mental condition, or his known habit of recklessness." (Citations and footnote omitted.) *Gunn v. Booker*, 259 Ga. 343, 346 (3) (381 SE2d 286) (1989). Here, there was no evidence of any mutual control between Cobra 4 and Yellow Ribbon, and the Newmans have not shown that Cobra 4, as the owner of the truck, had any knowledge of a habit of recklessness by Ayala, or even that such knowledge

---

[4] We note that, given our conclusions that Cobra 4 was not an alter ego of or engaged in a joint venture with Yellow Ribbon, the Newmans' negligent hiring and negligent supervision claims against Cobra 4 would fail as a matter of law. There can be no claim for negligent hiring, supervision, or retention where there was no evidence that Cobra 4 was Ayala's employer. See *McLaine v. McLeod*, 291 Ga. App. 335, 336 n. 3 (661 SE2d 695) (2008) (noting that there could be no negligent hiring claim where the defendant was not the employer).

could be inferred. But see *CGL Facility Mgmt. v. Wiley*, 328 Ga. App. 727, 732 (2) (b) (760 SE2d 251) (2014) (allowing the claim to go to the jury because there was a question of fact where the employer could have had knowledge of the driver's recklessness based on prior incidents). Rather, the record here shows that Ayala was not hired as a driver and had never driven one of the trucks before the day of the accident. Therefore, the Newmans' negligent entrustment claim against Cobra 4 fails as a matter of law, and Cobra 4 was entitled to summary judgment on this claim.

4. Cobra 4 argues that the trial court erred in denying its renewed motion for summary judgment on the ground that it is not a party to the Release. We need not address this argument in light of our holdings in Divisions 1, 2, and 3.

In summary, in case number A15A2347, we conclude that the trial court properly granted partial summary judgment to Cobra 4 on the ground that it was not engaged in a joint venture with Yellow Ribbon. We therefore affirm the 2014 order in part on these grounds. In case number A15A2346, we find that the trial court erred when it denied summary judgment to Cobra 4 on its alter ego and negligent entrustment claims. Accordingly, we reverse in part the 2014 order on these grounds and remand the case to the trial court with instructions to enter judgment in favor of

14

Cobra 4 on these claims. In light of these holdings, we need not address Cobra 4's enumeration of error with respect to the 2015 order.

*Judgment in case number A15A2346 reversed in part and remanded. Judgment in case number A15A2347 affirmed. Andrews, P. J., concurs. Branch, J., concurs fully in Divisions 1, 3, and 4, and concurs in judgment only in Division 2.*