**FIRST DIVISION
BARNES, P. J.,
GOBEIL and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**February 15, 2022**

# In the Court of Appeals of Georgia

A21A1463. LOWERY et al. v. NOODLE LIFE, INC.

MARKLE, Judge.

After Hee Jin Lowery was injured when a container of hot soup spilled onto her lap, she sued Noodle Life, Inc. for the negligence of its owners, alleging the soup was improperly packaged. Noodle Life moved for summary judgment, which the trial court granted. Lowery now appeals, alleging the trial court erred by granting summary judgment in Noodle Life's favor because there was sufficient evidence from which a jury could find it liable for negligence under theories of alter ego, joint venture, and/or agency. For the reasons that follow, we affirm.

> In order to prevail on a motion for summary judgment under OCGA § 9-11-56, [Noodle Life], as the moving party, must show that there exists no genuine issue of material fact, and that the undisputed facts, viewed in the light most favorable to the nonmoving party, demand

judgment as a matter of law. Moreover, on appeal from the denial or grant of summary judgment the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citation omitted.) *In/Ex Systems v. Masud*, 352 Ga. App. 722, 723 (2) (835 SE2d 799) (2019).

So viewed, the underlying facts of the case are as follows. In July 2017, Lowery placed a "to go" order for soup from the restaurant, Noodle, in College Park. Upon arriving at her destination, Lowery retrieved her package from the seat, and, as she was attempting to exit her vehicle, the bottom of the paper bag broke, causing the hot soup to spill onto her lap. Lowery was severely burned on her inner thighs and groin area.

At the time of the incident, Noodle in College Park was owned and operated by Shou & Shou, Inc. Noodle Life owned and operated its own business, also known as Noodle, in midtown. The two companies are both owned by the same three siblings, and they share the same website. They did not share the same employees, but

Noodle Life did the food prep for both restaurants. Although the two companies combined vendor orders, they each paid their own portion of the orders.

Noodle Life had no ownership interest in either Shou & Shou, Inc. or Noodle in College Park, nor did Shou & Shou, Inc. have an ownership interest in Noodle Life or its restaurant located in midtown. Each company was responsible for operating its own business; they maintained separate bank accounts; neither company paid the staffing expenses of the other and they maintained separate payroll accounts; and each company bore their own profits and losses. Additionally, each company had its own employees for which they were responsible, and, on the date of this incident, Shou & Shou, Inc. employed the individuals working at Noodle in College Park.

After Lowery was injured, she sued Noodle Life for negligence, asserting that Shou & Shou, Inc. was the alter ego of Noodle Life; the two companies were a joint venture; that they were agents for one another; and that Shou & Shou, Inc.'s negligence is imputed to Noodle Life such that it was liable for her injuries.[1] Lowery also sued Shou & Shou, Inc., but settled her claims with it and its insurance company via a consent judgment, leaving only the claims against Noodle Life pending.

---

[1] Lowery also sued 3L Realty, LLC, and Bowl Fat, Inc., but they were subsequently dismissed from the case.

Noodle Life moved for summary judgment, arguing that it was separate and distinct from Shou & Shou, Inc. ,and it did not disregard the corporate form; alter ego is not a viable theory for imputing liability to Noodle Life; and the two companies did not share a joint venture or an agency relationship.[2]

Following a hearing, the trial court granted Noodle Life's motion. Relying on *Cobra 4 Enterprises v. Powell-Newman*, 336 Ga. App. 609 (785 SE2d 556) (2016) (physical precedent only as to Division 2), it found that, even though the two companies had the same owners and there may have been some overlap between them, the companies were neither a joint venture nor alter egos of one another. Lowery now appeals.

The concepts of alter ego, joint venture, and agency are separate but closely related theories for imposing liability. *Kissun v. Humana*, 267 Ga. 419, 420-421 (479 SE2d 751) (1997). In evaluating one corporation's liability for the acts of another, we

---

[2] Noodle Life further argued that Lowery's consent judgment with Shou & Shou, Inc. should have resolved the case between her and Noodle Life because Lowery agreed to a judgment with a joint tortfeasor, and that it was not liable to Mr. Lowery on his loss of consortium claim. It also argued that Lowery could not prevail on her negligence claims. Although Lowery's husband asserted a loss of consortium claim, because we conclude summary judgment in favor of Noodle Life was proper this claim fails as well. See *Behforouz v. Vakil*, 281 Ga. App. 603, 604 (636 SE2d 674) (2006) (grant of summary judgment on loss of consortium claim was also proper where claim was derivative of personal injury claims).

4

look to the business structure of each and the level of control one entity has over the other. Id. But evidence sufficient to establish one relationship between corporate parties may not be sufficient to establish another. Id. Likewise, business relationships and interdependency of one corporation and another, alone, are insufficient to establish liability under either of these three theories. See id. (evidence insufficient to show alter ego does not as a matter of law negate the existence of an agency relationship between the corporations); see also *Gateway Atlanta Apts. v. Harris*, 290 Ga. App. 772, 778 (2) (b) (660 SE2d 750) (2008) ("The mere existence of a business interdependency does not create a joint venture.") (citation omitted). With these principles in mind, we evaluate Noodle Life's alleged liability under each theory, finding no merit to any of them.

(a) *Alter ego*.

Lowery asserts that the trial court erred by granting summary judgment in favor of Noodle Life because there was a factual question regarding whether Noodle Life operated and controlled the Noodle restaurant in College Park, making Shou & Shou, Inc. merely the alter ego of Noodle Life. Because there was no evidence that the two companies were interchangeable entities, we disagree.

Under the alter ego doctrine, equitable principles are used to disregard the separate and distinct legal existence possessed by a corporation where it is established that the corporation served as a mere alter ego or business conduit of another. The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility. Plaintiff must show that the defendant disregarded the separateness of legal entities by commingling on an interchangeable or joint basis or confusing the otherwise separate properties, records or control.

(Citations omitted.) *TMX Finance v. Goldsmith*, 352 Ga. App. 190, 210 (6) (833 SE2d 317) (2019). Additionally, "when the elements of the doctrine are satisfied, the doctrine of piercing the corporate veil also can be used . . . to hold a 'family of corporations' liable for the debts of each other." Id. In order to pierce the corporate veil, however, there must be some evidence of abuse of the corporate form, and sole ownership of a corporation is not a factor. *Cobra 4 Enterprises*, 336 Ga. App. at 613 (2) (physical precedent only). "Where there is no evidence that the corporate arrangement is a sham that was designed to defeat justice, perpetuate fraud, or evade statutory, contractual, or tort liability, the issue of alter ego liability is not a jury question." Id.

Here, Lowery contends that Shou & Shou, Inc. was merely the alter ego for Noodle Life, and that Noodle Life actually operated the College Park restaurant because the College Park location used Noodle Life's menu, recipes, and food vendors; Noodle Life's employees did the food prep for Noodle in College Park; all catering orders for both locations were funneled through Noodle Life; both restaurants used the same website, and shared income and supplies; and Shou & Shou, Inc. paid Noodle Life's insurance premiums. However, a review of the evidence shows that, although there may have been some overlap between Shou & Shou, Inc. and Noodle Life, such as commonality of ownership, there are no other factors to impose the alter ego doctrine against Noodle Life.[3]

Contrary to Lowery's contention, *Cobra 4 Enterprises* is controlling. As in *Cobra 4 Enterprises*, each of these corporations maintained separate bank and payroll accounts. Each company bore their own profits and losses. Additionally, each company paid its own employees, and, on the date of this incident, Shou & Shou, Inc.

---

[3] To the extent Lowery argues in her reply brief that Shou & Shou, Inc.'s use of Noodle Life employees to prep food constitutes sharing employees, this is the first time she raises this argument and thus it will not be considered. *Stewart v. Johnson*, 358 Ga. App. 813, 814 (856 SE2d 401) (2021) ("any enumeration of error which is not supported in the *principle brief* by citation of authority or argument may be deemed abandoned . . . and we do not consider arguments that are raised for the first time in a reply brief.") (citation and punctuation omitted; emphasis in original).

both employed and paid the individuals working at Noodle in College Park. Although Noodle Life may have done the food prep for Noodle in College Park, all of the food at the College Park location was cooked on site by Noodle College Park employees.[4]

As such, the evidence shows these corporations were run as two separate entities, and Lowery has pointed to no evidence showing that one had control over the other to establish liability under an alter ego theory. *Cobra 4 Enterprises*, 336 Ga. App. at 614-615 (2) (no evidence of any commingling of assets between the two companies, one had no right of control over the other, the two corporations had separate bank accounts, and neither paid any expenses for the other); see also *NEC Technologies v. Nelson*, 267 Ga. 390, 397 (5) (478 SE2d 769 ) (1996) (no evidence that one corporation was an instrumentality for the transactions of the other, or that

---

[4] Lowery attempts to create an issue of fact by pointing to the deposition testimony of Lena Shou Kuo, one of the owners of both corporations, who testified that Noodle Life operated both restaurants as one. Kuo subsequently clarified, however, that the two restaurants shared the same menu and recipes, but that each paid for their share of the ingredients and supplies, and each hired its own employees to do the cooking and paid them from separate payroll accounts. Accordingly, under these circumstances, this evidence is insufficient to create an alter ego relationship. *Cobra 4 Enterprises*, 336 Ga. App. at 615 (2) (although there was some overlap between the two companies, there was no evidence of commingling or abuse of the corporate entity.).

there was commingling of money, records, or employees).[5] Therefore, there is no evidence in this case to raise a jury question regarding whether Shou & Shou, Inc. was the alter ego for Noodle Life, and the trial court properly granted summary judgment on this issue.[6]

(b) *Joint venture.*

Lowery next argues that the trial court erred in finding that Shou & Shou, Inc. and Noodle Life were not engaged in a joint venture because there was evidence of mutual control between the two corporations. Again, we disagree.

---

[5] Although Lowery asserts that Shou & Shou, Inc. paid Noodle Life's insurance premiums, this evidence is insufficient to show the commingling of assets on an interchangeable or joint basis or abuse of the corporate form sufficient to establish liability under an alter ego theory. See *Saks Mgmt. and Assoc. v. Sung Gen. Contracting*, 356 Ga. App. 568, 578-579 (3) (f) (849 SE2d 19) (2020); see also *Cobra 4 Enterprises*, 336 Ga. App. at 613 (2); *TMX Finance v. Goldsmith*, 352 Ga. App. 190, 210 (6).

[6] Noodle Life argues that the consent judgment between Lowery and Shou & Shou, Inc. further forecloses the issue of whether it should be held liable for the acts of Shou & Shou, Inc. because Lowery had a valid remedy for claims without the trial court finding evidence of alter ego sufficient to pierce the corporate veil. However, the trial court did not address this issue, and, given our conclusion in favor of Noodle Life on the issue of alter ego, we need not address it. See *Fross v. Norfolk Southern R. Co.*, 361 Ga. App. 235 __ (2) (863 SE2d 714, 721 (2)) (2021) ("Therefore, in the absence of a ruling below, we will not address this issue."); see also *Pneumo Abex v. Long*, 357 Ga. App. 17, 29 (2) (849 SE2d 746) (2020) ("As we have repeatedly explained, this is a Court for the correction of errors of law, and "if the trial court has not ruled on an issue, we will not address it.") (citation and punctuation omitted).

9

A joint venture arises where two or more parties combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control. Without the element of *mutual* control, no joint venture can exist. In order for one party to be liable for the negligence of another under a joint venture theory, *the party must have had the right to direct and control the conduct of the other party in the activity causing the injury*. The mere existence of a business interdependency does not create a joint venture.

(Citations and punctuation omitted; emphasis supplied.) *Gateway Atlanta Apts.*, 290 Ga. App. at 778 (2) (b); see also *Shamblin v. Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter Day Saints*, 352 Ga. App. 870, 877 (3) (836 SE2d 171) (2019); *Cobra 4 Enterprises*, 336 Ga. App. at 612 (1); *Kitchens v. Brusman*, 280 Ga. App. 163, 167 (3) (633 SE2d 585) (2006) ("Without the element of mutual control, no joint venture can exist.").

Here, Lowery relies on the same evidence asserted in support of her alter ego theory, and further asserts that a joint venture existed between the two companies because both restaurants were owned by the same three siblings with the right of mutual control over both companies. However, Lowery has failed to present any evidence showing that Noodle Life directed or controlled the conduct of Shou & Shou, Inc. or its employees in the activity that caused Lowery's injury. *Gateway*

*Atlanta Apts.*, 290 Ga. App. at 778 (2) (b). Noodle Life did not do the cooking for Noodle in College Park, and it did not employ or pay the individuals who allegedly improperly packaged the soup at Noodle in College Park. Other than the testimony of Lena Shou, who indicated she trained the Noodle employees at the College Park location to double bag take-out soup orders, there is no evidence in the record that Noodle Life or its employees had any involvement in the manner in which the soup was packaged when Lowery was injured. To the extent Lowery argues that Noodle Life and Shou & Shou, Inc. had mutual control over the other's business, this argument is unavailing as addressed supra. Although Lowery suggests that Noodle Life ran Noodle in College Park because, for example, it prepped the food for that location, she has pointed to *no* evidence showing that Shou & Shou, Inc. had any right of *mutual* control over the operation of Noodle Life's restaurant in midtown. "Without the element of mutual control, no joint venture can exist." (Citation omitted; emphasis supplied). *Gateway Atlanta Apts.*, 290 Ga. App. at 778 (2) (b); *Kitchens*, 280 Ga. App. at 167 (3). As such, Lowery's claim that the two entities engaged in a joint venture is without merit. *Cobra 4 Enterprises*, 336 Ga. App. at 612 (1); see also *Gateway Atlanta Apts.*, 290 Ga. App. at 778 (2). Accordingly, the trial court properly granted summary judgment on this point.

11

(c) *Agency*.

Finally, Lowery argues that the trial court erred in granting Noodle Life's summary judgment motion because there was sufficient evidence to establish that Shou & Shou, Inc. was Noodle Life's apparent or ostensible agent.[7] This argument is unavailing.

"The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." OCGA § 10-6-1.

> In order to impose liability pursuant to the doctrine of apparent or ostensible agency, the evidence must show: (1) the apparent principal represented or held out the apparent agent; and (2) justifiable reliance upon the representation led to the injury.

(Citation omitted.) *American Reliable Ins. Co. v. Lancaster*, 356 Ga. App. 854, 858 (1) (b) (849 SE2d 697) (2020); see also *Kid R Kids Intl. v. Cope*, 330 Ga. App. 891, 894 (2) (769 SE2d 616) (2015); *MCG Health v. Nelson*, 270 Ga. App. 409, 414 (5)

---

[7] Lowery does not argue that Shou & Shou, Inc. was Noodle Life's actual agent. See *American Reliable Ins. Co*, 356 Ga. App. 854, 858 (1) (b) (849 SE2d 697) (2020).

12

(606 SE2d 576) (2004) ("liability is premised on the principal's right to control the time and manner of an agent's work.") (citations and punctuation omitted).

Here, Lowery has pointed to no evidence showing that Noodle Life held Shou & Shou, Inc. out to be its agent or that she relied on any such representation.[8] *American Reliable Ins. Co.*, 356 Ga. App. at 858 (1) (b). Accordingly, Lowery has failed to establish that Shou & Shou, Inc. was Noodle Life's agent, and the trial court properly granted summary judgment on this issue as well.

*Judgment affirmed. Barnes, P. J., and Gobeil, J., concur.*

---

[8] Lowery argues that she justifiably relied on Noodle Life's website, which promoted Noodle as a single restaurant with three locations. However, we do not consider this argument raised for the first time in her reply brief. *Stewart*, 358 Ga. App. at 814.